THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT BROOKS, Defendant-Appellant.

Third District   No. 76-10

Opinion filed June 30, 1977.

Robert Agostinelli, Mark Burkhalter, and Larry Mackey, all of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Keefe, State's Attorney, of Rock Island (Linda Vodar and James E. Hinterlong, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury trial the defendant, Robert Brooks, was found guilty of the offenses of attempt murder and aggravated battery. The circuit court of Rock Island County entered judgments of conviction on each offense, but sentenced defendant only on the attempt murder conviction, namely, a term of from 10 to 30 years in the penitentiary.

On this appeal the defendant raises four issues. First, he argues the court erred in the instruction which it gave defining murder, the underlying offense in the attempt charge. Second, defendant contends

evidence of an unrelated offense was erroneously admitted by the trial court. Third, defendant asserts that the offenses are based on the same act and therefore only one judgment of conviction and sentence is proper. Fourth, the trial court erred in determining the proper sentence to be imposed because it incorrectly believed a mandatory minimum sentence of 4 years was required.

The defendant and the complaining witness, Addie Edwards, were living together at 63 34th Street, Apartment 35, Rock Island, until the morning of March 1, 1975. On that morning according to Edwards, she drove with the defendant to the rental office to pay the rent. As the defendant got out to see if the landlord was in, Edwards told him, "don't be there [the apartment] when I get back," and she pulled away and left him. She then drove to 11th Street, where she arranged to get the locks and the chain on the doors to her apartment changed. She then went to visit friends in Davenport and did not return until approximately 8:30 that evening, leaving her children with her sister.

According to the defendant, in the meantime, he went to 9th Street after Edwards had driven off. He later went to the apartment to see if Addie was there and discovered that the locks had been changed. The defendant, however, was not upset at this fact stating that, "she done things like this before, you know," and went to look for Addie at her sister's apartment, which was in the same complex.

It was about 8 p.m. when the defendant called on Delores Nunn (Addie's sister). Delores stated that the defendant made a number of threats against Addie's life at this time. The defendant, however, denied having made any of those statements.

Upon leaving Delores Nunn's apartment, the defendant went to visit his mother and his brother. At around 10 p.m. the defendant left his brother's house, first stopping at the Clover Club and then proceeding to Jimmy's Rainbow Inn.

The defendant entered Jimmy's and saw Addie Edwards sitting at the bar. He walked up to her, touched her on the shoulder and said, "Can I talk to you a minute?", to which Edwards refused. It appears from the testimony that it was at this point the defendant pulled out a knife.

When Addie Edwards saw the knife she got up and ran, and the defendant ran behind her. Edwards testified that she saw the defendant's arm in the air with the knife in his hand. Although it was confirmed that the defendant ran behind the victim and that his arm was raised, all other eyewitnesses testified they never saw the knife in the defendant's hand at this point.

The defendant testified that he attempted to grab Edwards and that she stopped suddenly, causing him to crash into her body. She fell forward and the defendant, who was also falling, tried to prevent himself from

hurting her. He stated that during his fall, his left hand fell across her left shoulder and the other hand with the knife hit her neck.

The defendant testified further that he had no intent to hurt Edwards in any way and that the reason he had the knife in the first place was only to threaten her so that she would talk to him.

Edwards testified that she remembers falling, but she was not sure if any one fell on top of her. She was, however, able to recollect that no one ran into her.

After the incident the defendant left the bar and went to his aunt's house, where he called the hospital. Discovering that Addie was in intensive care and could not talk to anyone, the defendant fell into shock and, amidst great mental confusion, traveled to East St. Louis, in an attempt to straighten things out.

As indicated earlier the jury found defendant guilty of attempt murder and aggravated battery.

■■ Defendant's first assignment of error relates to the giving of the definitional instruction of murder over his objection. The instruction provides:

> "A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual or he knows that such acts will cause death to that individual or he knows that such acts create a strong probability of death or great bodily harm to that individual."

According to the defendant the instruction was improper because it included a lesser mental state than the intent to kill, *i.e.*, intent to do great bodily harm. In his brief the defendant relies on *People v. Muir*, 38 Ill. App. 3d 1051, 349 N.E.2d 423. However, subsequent to the filing of the defendant's brief the supreme court granted leave to appeal and has recently handed down its opinion in *People v. Muir*, 67 Ill. 2d 85. In *Muir* the court discussed the contentions made by the defendant in this case and after fully discussing the issue rejected the claim made here by the defendant. In *Muir* the court held that defining murder in terms of the statute, including the provision concerning great bodily harm, was a proper statement of the offense in the case where the defendant was charged with attempt to commit murder. It is unnecessary to discuss this issue further since we believe the *Muir* case controls our decision in this case. We hold no error was committed in the giving of the instruction defining murder. Next, defendant argues the admission of evidence of a break-in at Addie Edward's residence prior to her being stabbed by the defendant was erroneous because that evidence was irrelevant.

During the direct examination of the complaining witness Edwards, she

described the weapon in the defendant's hand as a butcher knife belonging to her. According to her testimony, she last saw the knife in her apartment the morning of the incident. Thereafter, she was asked about a burglary which had occurred at her apartment after she left in the morning and before she was taken to the hospital after the stabbing incident. She indicated that a burglary had taken place and it had been reported to the police.

The defendant objected to the testimony regarding the burglary, indicating that it was unrelated to the defendant and was prejudicial since, as argued by the People, it gave added support to proving the defendant intended the conduct with which he was charged. The defendant denied using the knife described by and belonging to Edwards and claimed that he had only a pen knife which he was holding for a friend.

■■ We are well aware of the general rule which provides that evidence of other offenses is inadmissible to prove that a particular offense was committed unless it comes within one of the well-recognized exceptions. (See *People v. McDonald*, 62 Ill. 2d 448, 343 N.E.2d 489; *People v. Cage*, 34 Ill. 2d 530, 216 N.E.2d 805.) We believe the evidence was proper for two reasons. Since the complaining witness identified the weapon as her knife last seen in her apartment on the morning of the incident, the burglary offers an explanation of how the knife might have come into the possession of the defendant. Secondly, if the defendant had the complaining witness's knife under such circumstances that it could be inferred he broke into the apartment to get it, this would offer additional support, as argued by the prosecution, that the defendant intended to commit the offense charged. As applied to the facts of this case, we are unable to agree with the defendant that the only effect of such evidence was to indicate a propensity to commit criminal offenses and hence the offense charged. We hold no error was committed in the admission of this evidence.

The defendant argues the judgments of conviction should not have been entered on both offenses. We agree that on the authority of *People v. Lilly*, 56 Ill. 2d 493, 309 N.E.2d 1, only a judgment and sentence on the more serious crime of attempt murder is proper. The People have conceded that if the conviction and sentence for attempt murder are upheld by this court, the judgment of conviction for aggravated battery should be vacated.

■■ Finally, defendant contends this cause should be remanded for reconsideration of the sentence because the trial court incorrectly believed the mandatory minimum sentence for the offense of attempt murder was four years, while in fact there is no mandatory minimum

specified in the statute for this offense. Defendant's contention is based on the language of section 8—4(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—4(c)), which provides:

> "A person convicted of an attempt may be fined or imprisoned or both not to exceed the maximum provided for the offense attempted but, * * *
>
> (1) the sentence for attempt to commit murder shall not exceed the sentence for a Class 1 felony; * * *."

This precise question was considered in the recent case of *People v. Athey*, 43 Ill. App. 3d 261, 356 N.E.2d 1332, *appeal denied*, wherein the court adopted the position that for the offense of attempt murder there was no mandatory minimum provision applicable. If, as the *Athey* case holds, there is no mandatory minimum sentence for this offense, we believe resentencing of the defendant is required. As appears from the record, the trial judge believed that the offense did call for a mandatory minimum sentence of four years. In holding, and we believe correctly, that an enhanced sentence was warranted because of the defendant's record, the court did use such four-year mandatory minimum sentence as a reference, and consequently we are unable to say that the trial judge would or would not have imposed a minimum sentence of 10 years had he been aware there was no minimum mandatory four-year sentence.

For the foregoing reasons the judgment of conviction of the circuit court of Rock Island County for the offense of attempt murder is affirmed but the cause is remanded to such court for resentencing in accord with the views expressed in this opinion. The judgment of conviction of said court for the offense of aggravated battery is vacated.

Affirmed in part and vacated in part and remanded, with directions.

ALLOY, P. J., and SCOTT, J., concur.