THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES JONES, Defendant-Appellant.

First District (4th Division)    No. 76-347

Opinion filed December 1, 1977.

James J. Doherty, Public Defender, of Chicago (Sam Majerowicz and Leonard Solomon, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Charles Jones (defendant) was indicted for aggravated battery and attempt to commit murder. Following his jury trial the jury returned guilty verdicts as to those two offenses as well as on the lesser included offense of reckless conduct. The trial judge entered judgment on the counts of aggravated battery and attempt to commit murder, sentencing defendant to terms of three to 10 years and six to 20 years in the Illinois State Penitentiary on those respective counts. On appeal defendant contends: (1) he was not proven guilty beyond a reasonable doubt; (2) testimony concerning the commission of a prior offense by defendant was improperly allowed; (3) the State improperly cross-examined a defense witness concerning defendant's failure to produce certain witnesses; (4) defendant's sentence for attempt to commit murder may have been affected by the trial court's potential misapprehension of the minimum sentence allowed by statute; (5) defendant was improperly convicted of aggravated battery, as that charge was based on the same conduct as the charge of attempt to commit murder.

We affirm defendant's attempt to commit murder conviction and reverse his conviction for aggravated battery.

Defendant's contentions on appeal require a summation of the evidence adduced at trial. Carol Walters, who, at the time of the events at issue, was defendant's girlfriend and had been living with him for almost

three years, testified for the State. On March 19, 1974, she was with the defendant at his apartment. Between 1 and 4 p.m. that day defendant told Carol that he was angry about what had happened the previous Saturday with Terry Szewczyk, the victim in this case. He stated that Terry was telling everybody about it. (On cross-examination defendant's attorney elicited from Carol the information that defendant was angry about Terry's statements that defendant had raped her, an accusation which Carol testified defendant had denied to her.) Carol also recalled that during that same conversation defendant said that: "* * * he was going to straighten it out and that he was going to off her." Carol interpreted defendant's use of the word "off" to mean that he was going hurt Terry in some way. Between 8:15 and 9:30 that evening Carol rode in a car with defendant to an alley behind defendant's apartment. He went into the apartment building and returned with a gun, which he placed in the back of his pants under his jacket. Defendant stated at that time that he was going to the apartment of Debbie Vasquez, with whom Terry was then living, to straighten everything out. They proceeded to that apartment, where defendant instructed Carol to knock and identify herself, while he hid from view. Carol did so and Terry opened the door. Carol entered, followed by defendant, who said he wanted to talk with Terry. Terry sat on a chair in the middle of the room and defendant walked up to her, asking why she had caused trouble. Terry responded that she did not want any trouble, which was why she had moved out. Defendant asked why she was telling everybody a lie about what had happened, then he pulled out a gun from behind his back and pointed it at the left side of Terry's chin. According to Carol, defendant was in the middle of a sentence about "if this trouble continued" when the gun went off and Terry fell back bleeding. Defendant stated that he did not mean to do it, that it was an accident. Carol told him to leave the apartment and he did so. Also in the apartment at the time were Debbie Vasquez and Ben Darling. Darling went out to call for help. When Carol followed Darling downstairs she saw him pick up a gun out of the bushes. Darling unsuccessfully tried to convince Debbie to get rid of it, then he went upstairs with it. On cross-examination Carol stated that she was surprised when the gun went off.

Terry Szewczyk, who was 15 at the time of the incident, testified that until the Saturday before the incident she had lived for one year with defendant's brother, William Jones, as his girlfriend. Also residing with her during that time were defendant's brother, Zyrone Jones, defendant and Carol Walters. The Saturday before the shooting, Terry moved in with Debbie Vasquez as the result of "some incident." On March 19, 1974 at about 9:45 p.m. Terry was at the Vasquez apartment when someone whose voice she recognized as that of Carol Walters knocked at the door.

Terry opened the door and Carol walked in, followed by the defendant. Defendant walked up to within inches of Terry, who had sat down, and asked why she was telling people he had raped her. Terry replied that she did not want any trouble. Defendant then reached behind himself and produced a gun which he pointed at the left side of Terry's face. Terry closed her eyes. She could not recall whether defendant said anything further. Terry heard a "pow" and felt some pain. The next thing she remembered was regaining consciousness in a hospital a week later. She then testified concerning the extensive injuries to her jaw which were caused by the gunshot, injuries which prevented her opening her jaw more than one-quarter of an inch.

Patrolman Edward Beyer testified, over defendant's objections, that he was part owner and manager of the building which contained defendant's apartment. Beyer had an office in the basement of that building. In that office he kept a .38-caliber snub-nose revolver, wrapped in rags and hidden in the back of a sink. Beyer had last seen the gun in his office about three days prior to March 19, 1974. At that time it was in working order and was fully loaded with six rounds of ammunition. Defendant had access to the office because he had been working for Beyer, doing some janitorial work and keeping teen-agers out of the hallways and the laundromat. Beyer next saw his gun, which he identified by its serial number, in May of 1974 when he got it from the Recovered Property Section of the Chicago Police Department. Beyer was never asked at trial, nor did he state, whether defendant had permission to use the gun. Beyer did testify that when he arrested the defendant, defendant stated that it was an accident, he did not mean to do it, and he was sorry. On cross-examination Beyer stated that though there had been occasional fights in his building, he never had occasion to use the gun there. Beyer identified the gun produced by the State as being his gun.

Patrolman James Adams testified that the same gun was recovered near the scene of the shooting soon after the shooting occurred. At that time the gun contained five live rounds and one expended one. Adams owned a gun which was identical to the one found at the scene except that his was blue steel, not nickel-plated. Adams had fired his gun hundreds of times. Because of a safety device on that type of gun it could only be fired in two ways: by pulling the hammer all the way back and then pulling the trigger or by pulling the trigger all the way back. On cross-examination by defendant's attorney Adams stated that he had read and heard that the average trigger pull on such a revolver was five to six pounds. The gun would not fire in any other way, even if someone beat on it. The gun was then admitted into evidence without objection.

Defendant's only witness was Willie Jones, his brother. Willie had lived with Terry Szewczyk, his girlfriend, in the same apartment as the

defendant until several days prior to the shooting. At that time he helped her move to the apartment of Debbie Vasquez. The day he helped her move, Terry did not tell Willie that defendant had raped her. (Terry Szewczyk, however, testified on cross-examination that between the 17th and 19th of March she told Willie Jones that defendant had raped her.) Willie volunteered that on the moving day he was accompanied by Ben Darling, whom he identified as a friend. On cross-examination Willie testified that he was not present when Terry was shot. The following testimony was then elicited:

"MR. BROWN: Q. Ben Darling a friend of yours?

THE WITNESS: A. Yes.

Q. Ben Darling, a friend of your brother's?

A. Yes.

Q. Do you know where Ben Darling is now?

A. Yes.

Q. Debbie Vasquez a friend of yours?

A. Yes.

MR. MURPHY: Objection.

THE COURT: Objection overruled.

MR. BROWN: Q. Do you know where Debbie Vasquez lives now?

THE WITNESS: A. Yes.

Q. Come down here voluntarily today?

A. I came down here, yes.

Q. Somebody serve you with a subpoena?

A. No.

Q. Have you ever talked to anybody from the State's Attorney's office about this case?

MR. MURPHY: Objection.

THE COURT: Objection overruled.

THE WITNESS: No.

MR. BROWN: Q. Ever tell the State's Attorneys where Ben Darling lives?

THE WITNESS: A. No."

On redirect examination Willie testified that nobody from the State's Attorney's office had attempted to contact him since the date of the shooting.

## I.

■■ Defendant's reasonable doubt argument relates solely to the issue of his intent to kill, a requisite element of attempted murder. (*People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888.) It is undisputed that he held a gun to the victim's head and that moments later the gun discharged,

severely injuring the victim. But defendant contends that reasonable doubt concerning his guilt remains because the evidence does not eliminate the possibility that he intended only to threaten the victim and that the gun discharged accidentally. We disagree. The uncontradicted evidence at trial established that the day of the shooting, only hours before it occurred, defendant expressed anger about Terry's accusations and threatened to "off" her. He then obtained a gun, gained access to Terry's apartment through subterfuge, approached to within a few inches of her, and pointed the gun at her head. Officer Adams testified that unless a gun of that type were cocked, it could only be fired by applying five to six pounds of pressure to the trigger in order to pull the trigger all the way back. The safety mechanism on that type of gun was such that even pounding on it could not cause it to fire unless the hammer were pulled back by cocking it or pulling the trigger all the way back. There was no testimony indicating that defendant had cocked the weapon. The testimony was that he had removed it from his pants, where it was highly improbable that it was cocked, just before he pointed it at Terry and it discharged. Terry testified that her reaction was to close her eyes. There was no evidence of any sudden motion by her that could have jarred the weapon, even assuming it was cocked. Furthermore, if defendant had cocked the weapon at that point this, too, would have evidenced his intent to fire the weapon.

Defendant cites his statements prior to the shooting that he wished to "straighten out" the matter. He also notes Carol's testimony that he was in midsentence when the gun discharged, and that immediately after the shooting he said it was an accident. But defendant's self-serving statements before and after the shooting do not comport with his threat to "off" Terry and his actions in furtherance of that threat. The other witness to the shooting, Terry Szewczyk, could not recall whether defendant was saying anything when she was shot. In any event this isolated fact, when viewed in the context of the incriminating evidence we have summarized, does not raise a reasonable doubt as to defendant's intent.

■■ Proof of a defendant's intent to kill another can rarely be based on direct evidence. Therefore such intent may be established from the surrounding circumstances. (*People v. Athey* (1976), 43 Ill. App. 3d 261, 356 N.E.2d 1332.) This question was in the first instance one for the jury as the trier of fact. (*In re Weigler* (1976), 37 Ill. App. 3d 478, 346 N.E.2d 171.) The jury clearly found that the circumstances in this matter established that defendant intended to kill Terry Szewczyk. Our review of the evidence establishes no reasonable doubt as to this conclusion, and we, therefore, cannot reverse that determination. The defendant's suggestions of alternate intentions and accidental firing amount only to speculation and do not rise to the level of reasonable doubt.

## II.

■■■ At trial defendant unsuccessfully sought, by a motion *in limine* to prevent the testimony of Officer Beyer concerning his ownership of the gun used by defendant, defendant's access to the office in which he kept the gun, and his recovery of the gun from the police department. It is defendant's contention that this testimony improperly suggested the commission by defendant of a prior crime—theft of the gun. Evidence tending to suggest prior misconduct or commission of another crime by an accused is inadmissible unless it is relevant to establishing such factors as identity, intent, knowledge, motive, a common scheme, or a fact material to the issue on trial. (*People v. Cage* (1966), 34 Ill. 2d 530, 216 N.E.2d 805; *People v. King* (1972), 4 Ill. App. 3d 942, 282 N.E.2d 252.) Where the evidence would be highly prejudicial it should be kept out even though it has some probative value. (*People v. Butler* (1975), 31 Ill. App. 3d 78, 334 N.E.2d 448.) We first note that the evidence in question here did not clearly establish that defendant took the weapon without permission. Indeed, the evidence established that defendant had access to the location of the weapon because of his work for Officer Beyer, work which in part involved building security. Defense counsel properly argued to the jury that Officer Beyer was aware that defendant, working for him in a security capacity, had access to the gun. This was a reasonable inference to be drawn from the evidence, and one which would negate a conclusion that defendant had stolen the weapon. The State was circumspect in this area. The testimony elicited from the officer established only that defendant had access to the gun; nor was it suggested in closing argument that the gun was improperly taken. Thus, while the evidence at issue could have supported a conclusion that defendant had improperly taken the gun, it did not necessarily do so. This tends to reduce the potential prejudice to the defendant.

While the possible prejudice to the defendant was slight, the relevance of this evidence to the State's case was clear. Their witnesses had testified that defendant had a gun, but they did not identify that gun. Officer Beyer's testimony, in conjunction with that of Carol Walters, tended to establish that the gun used by the defendant was the one recovered from the shooting scene and introduced into evidence by the State. This also tended to corroborate Carol's testimony that defendant armed himself just prior to the shooting; clearly an important factor in deciding the disputed issue of intent. This case is thus distinguishable in crucial factors from the main case on which defendant relies, *People v. Blakely* (1972), 8 Ill. App. 3d 78, 289 N.E.2d 273. There defendant was convicted of armed robbery of a tavern. At trial the State introduced evidence that one hour before and five miles away, defendant participated in the armed robbery

of a bus, during which a gun *resembling* the one used in the tavern robbery was taken. In reversing defendant's conviction because of the introduction of this evidence, the appellate court recognized that such testimony might be admissible if relevant to factors such as identity and proximity of a defendant in time and place to the occurrence of the charged offense. But they found that in that instance the evidence was not relevant and was unnecessary: it did not tend to establish defendant's identity as one at the scene of the substantive offense, the identification of the weapon had already been established, and there was no need to establish by this evidence that defendant had the ability to commit the armed robbery of the tavern as it was not disputed that he was armed at that subsequent time. Given the substantial prejudice resulting from proof of a prior armed robbery, the court reversed and remanded. But in the cause before us we have noted the relevance of this testimony to the crucial issue of intent, as well as its importance in establishing that the gun produced at trial was the one used by the defendant. Furthermore, we have concluded that no substantial prejudice resulted from this evidence since it was subject to an innocent construction. Because this evidence was relevant and constituted an important facet of the State's proof of defendant's intent, the State was properly allowed to present it, despite the possibility of some prejudice resulting to the defendant. (*People v. Ostrand* (1966), 35 Ill. 2d 520, 221 N.E.2d 499.) They were entitled to do so affirmatively, and were not required to accept defendant's offer to stipulate that Officer Beyer's weapon was the one used by the defendant and recovered near the scene. *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208; (1971) *rev'd in part on other grounds* (1971), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279; *rehearing denied* (1971), 404 U.S. 875, 30 L. Ed. 2d 121, 92 S. Ct. 32.

### III.

■■ We have set forth that portion of the cross-examination of Willie Jones by the State which defendant argues constituted comment on defendant's failure to produce certain witnesses. Such comment is impermissible unless it is clear that such witnesses are not accessible to the prosecution and are within defendant's power to produce. (*People v. Munday* (1917), 280 Ill. 32, 117 N.E. 286.) Even then there is no presumption raised that such evidence would be unfavorable to the defendant, it only becomes a circumstance which the jury may consider in evaluating defendant's guilt or innocence. (*Munday.*) One other exception to the general bar on such comment is where a defendant has interjected in a case his activities with individuals, such as potential alibi witnesses, and then does not produce them at trial. (*People v. Sanford*

(1968), 100 Ill. App. 2d 101, 241 N.E.2d 485.) However, in the case at bar, the State did not allude in final argument to defendant's failure to produce any witnesses, as was the case in *Munday* and *Moore*, nor could an implication of such comment be derived from the cross-examination of Willie Jones. At most there was an implication that Willie Jones had not revealed the location of potential occurrence witnesses to the State. But even this implication was eliminated when on redirect examination Willie stated that the State had never contacted him. Defendant never suggested through evidence or argument that the witnesses at issue would be helpful to him, therefore, there was no opportunity for the State to suggest that the absence of such witnesses at trial contradicted such a claim, as occurred in *Moore*. In short, defendant has not established the applicability of the rule he seeks to invoke, nor has he established any actual prejudice to his cause resulting from the cited cross-examination.

## IV.

■■ Defendant finally contends that his sentence should be vacated and the cause remanded for a new sentencing hearing because of a "potential misapprehension" by the trial judge that the minimum term for attempt to commit murder was four years.

The pertinent statute provides:

> "[a] person convicted of an attempt may be fined or imprisoned or both not to exceed the maximum provided for the offense attempted but, * * *
>
> (1) the sentence for attempt to commit murder shall not exceed the sentence for a Class 1 felony;
>
> * * *." Ill. Rev. Stat. 1973, ch. 38, par. 8—4(c).

The appellate courts for the fourth and third districts have held that this language means there is no minimum sentence established for attempt to commit murder; the minimum is within the discretion of the trial judge. (*People v. Athey* (4th Dist. 1976), 43 Ill. App. 3d 261, 356 N.E.2d 1332; *People v. Brooks* (3d Dist. 1977), 50 Ill. App. 3d 4, 364 N.E.2d 994.) The appellate courts for the first and second districts have held that the crime is a Class 1 felony for sentencing purposes and thus the statutory minimum is four years. (*People v. MacRae* (1st Dist. 1977), 47 Ill. App. 3d 302, 361 N.E.2d 685; *People v. Joupperi* (2d Dist. 1975), 31 Ill. App. 3d 558, 334 N.E.2d 846; also see two cases from the first district, second division, in which it was assumed that the crime was a Class 1 felony for sentencing purposes: *People v. Taylor* (1974), 25 Ill. App. 3d 396, 323 N.E.2d 388; *People v. Lonzo* (1977), 47 Ill. App. 3d 939, 365 N.E.2d 528.) We agree with the court in *MacRae* that the intent of this provision was to provide that sentencing provisions for Class 1 felonies should apply to this

crime. Since defendant's sentencing argument is premised on the construction that there is no such applicable minimum, this finding disposes of that contention.

■■ ■ However, because this precise issue is presently before our supreme court (*People v. Moore* (4th Dist. 1976), 42 Ill. App. 3d 1076, 359 N.E.2d 511 (Rule 23 order), *appeal allowed* (1977), 65 Ill. 2d 583; *People v. Kucharczyk* (4th Dist. 1976), 42 Ill. App. 3d 1076, 359 N.E.2d 511 (Rule 23 order), *appeal allowed* (1977), 65 Ill. 2d 583), we note that even if it were determined that the crime carries no specified minimum sentence, the facts in the case at bar would not require reversal. In *Athey, Moore,* and *Kucharczyk* the defendants were sentenced to a minimum term of four years, a term which the respective trial courts clearly indicated they believed to be the statutory minimum. In *Brooks,* the only other case our research has uncovered in which a sentence was vacated on this basis, the defendant received a sentence of 10 to 30 years, the appellate court expressly stating that the record established that the trial court believed the statutory minimum was four years. The sentence was vacated because the court found that it was unable to say whether or not the trial judge would have imposed the same minimum had he known that there was no statutory minimum. In the case at bar we cannot determine from the record what the trial court believed the minimum to be. The State recommended "substantial penitentiary time in excess of the minimum," while defendant's attorney asked for "the minimum." In imposing sentence the trial judge did not refer to any statutory minimum. The record does however establish that the court considered the nature of the crime, including the serious permanent injuries incurred by the victim, as well as defendant's background and the possibility of rehabilitation. The sentence imposed was within the range provided by statute, regardless of which statutory construction was applicable as to the minimum. Defendant's argument concerning the possible effect of a possible misapprehension of the trial judge concerning the statutory minimum is not supported by the record, and we will not vacate on the basis of such unsupported speculation. Nor did the sentence imposed constitute an abuse of discretion. Where there is no such abuse, the sentence of the trial court may not be altered upon review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■■ Defendant correctly contends, and the State concedes, that his conviction for attempt to commit murder precluded a conviction for the lesser included offense of aggravated battery, which was based on the same conduct. (*People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1; *People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387.) Accordingly, we reverse his conviction for aggravated battery.

For the foregoing reasons, defendant's conviction for attempt to commit murder is affirmed; his conviction for aggravated battery is reversed.

Affirmed in part: reversed in part.

DIERINGER, P. J., and LINN, J., concur.