THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICKY HOWARD, Defendant-Appellant.

Fourth District   No. 15497

Opinion filed November 27, 1979.

Richard J. Wilson, of State Appellate Defender's Office, of Springfield, and Lynn Ohrenstein, law student, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Marc D. Towler, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant, Ricky Howard, was convicted of the offenses of unlawful use of weapons, reckless conduct, attempted murder, and armed violence. He was sentenced to 30 years for each of the offenses of attempted murder and armed violence, sentences to run concurrently. Defendant appeals from the convictions and sentences.

The convictions arose from a shooting that occurred at the home of Ralph Ritter on May 7, 1978, in Tilton, Illinois. The following uncontroverted evidence was adduced at trial.

During the late afternoon and early evening of May 7, 1978, Ritter received four phone calls from defendant. Each time defendant requested that Ritter meet him at a local tavern; Ritter refused. At the time, Ritter had known defendant for approximately 10 years. Later that evening a bronze-colored Hornet automobile, with two persons, parked on the roadway in front of the Ritter home; the horn was sounded; and two shots were fired through the kitchen window. One bullet was found lodged in the cupboard above the refrigerator. Charles Gilroy was the driver of the car; defendant was the passenger and the person who fired the shots. It still was light when the shooting occurred.

In response to her husband's request, Mrs. Ritter took their children into the bedroom and called the police. The shots were fired while she was on the phone. When the police arrived, Ritter gave them a description of the auto. A 1976 Hornet, occupied by defendant and Gilroy, was stopped sometime later. A .22-caliber automatic rifle and two spent cartridges were found in the car. A firearms examiner who testified at defendant's trial was of the opinion that the cartridge casings had been fired from the rifle, but he was unable to determine if the slug found in the kitchen cabinet had been fired from the rifle which was found in the car. The rifle belonged to Gilroy.

Gilroy was offered immunity by the State in return for his testimony at defendant's trial. He testified that on May 7, 1978, at approximately 7 p.m., he met defendant at a trailer; defendant was in possession of Gilroy's rifle, the rifle that had been found by the police after the shooting. Defendant stated that Ritter, in Tilton, owed him $100 and that he was going to get it back. Defendant told Gilroy that he wanted to talk with Ritter and asked Gilroy to drive him there. They arrived at approximately 8:30 p.m.; it was twilight. Defendant told Gilroy to honk the horn; defendant then removed the rifle from the back of the car and held it; after Gilroy honked the horn again, defendant fired two shots at the house.

Cindy Bailey, Crystal Bailey, and Marcy Middendorf, who all had been at the trailer with defendant on May 7, testified that defendant left with Charles Gilroy; defendant took a gun with him. Cindy Bailey testified that defendant said that he was "going to Tilton to scare a guy" who owed him money. Marcy Middendorf testified that defendant said that he "was going to go talk to some guy," while Crystal Bailey stated that they all had tried to persuade defendant not to take the gun with him.

Aside from the uncontroverted facts there is an area of conflict that is relevant to defendant's appeal. Gilroy testified that after he honked the

horn, he saw a head in what he thought to be the living room window, not the kitchen. Defendant then fired the shots. Ritter testified, however, that he was looking from the illuminated kitchen window when defendant aimed the gun and fired.

Defendant first contends that he was not proved guilty of attempted murder beyond a reasonable doubt. Defendant submits that the facts only support the inference that he acted with the intent to scare Ralph Ritter, not with the intent to kill him. Defendant's submission relies primarily on Gilroy's testimony that he saw a head in the living room at the time that the shots were fired. Therefore, defendant argues, when he fired at the kitchen window he could not have been aiming at Ritter. The State contends, on the other hand, that the evidence supports the conclusion that defendant deliberately aimed and fired at Ritter.

■■ A person commits attempted murder when, with intent to kill, he does any act which constitutes a substantial step toward the commission of murder (Ill. Rev. Stat. 1977, ch. 38, par. 8—4; *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28). Proof of a defendant's specific intent to kill is a requisite element of attempted murder. (*People v. Trinkle* (1976), 40 Ill. App. 3d 730, 353 N.E.2d 18, *aff'd* (1977), 68 Ill. 2d 198, 369 N.E.2d 888.) Since such intent rarely can be based on direct evidence, it may be established from surrounding circumstances, such as the character of the assault and the use of a deadly weapon. *People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209; *People v. Jones* (1977), 55 Ill. App. 3d 446, 370 N.E.2d 1142.

While the question of defendant's intent is one for the jury as the trier of fact (*Jones*), the conviction will be reversed when the requisite intent is not proved beyond a reasonable doubt. *People v. Henry* (1971), 3 Ill. App. 3d 235, 278 N.E.2d 547.

■ In view of all the circumstances here, especially those that transpired outside the Ritter house, we conclude that the jury reasonably could infer that defendant fired the gun with the intent to kill complainant. Defendant transported a gun to the house; requested that Gilroy honk the horn, apparently to get Ritter's attention; took aim at the lighted window where complainant, according to his testimony, was standing; and fired two shots through the window.

Although Ritter's testimony that he was in the kitchen when the shots were fired conflicts with that of Gilroy that he saw a head in the front room before the shots were fired, the conflicting evidence is apparent from the record, and its resolution was left properly to the trier of fact. the jury apparently chose to believe complainant. Moreover, the nature of the conflict does not give rise to a reasonable doubt of defendant's guilt.

This case does not have a circumstance which, in our opinion, is

comparable to those circumstances that have created a reasonable doubt regarding a defendant's specific intent to kill. For example, in *Trinkle*, defendant was convicted of attempted murder for shooting a gun at a building that housed a tavern. Both the appellate court and the supreme court observed that there was no evidence showing that defendant knew that the victim was standing behind the door (68 Ill. 2d 198, 204, 369 N.E.2d 888, 891; 40 Ill. App. 3d 730, 734, 353 N.E.2d 18, 22). In *Henry*, defendant was convicted of attempted murder for firing at Chicago police officers during a race riot. The police were driving an unmarked car and the evidence showed that the night was dark. The officer did not see the gun, but saw flashes as it was discharged, and testified that he believed that the shots were fired in the direction of the car. He conceded, however, that the gun could have been fired into the air, which is what defendant claimed at the time of his arrest. In reversing the conviction, the court noted that defendant could have apprehended danger on that night and that as an ex-Marine with an expert rating in marksmanship, it was unlikely that defendant could have missed a target as large as a car. See also *People v. Burdine* (1978), 57 Ill. App. 3d 677, 373 N.E.2d 694, and cases cited therein at 57 Ill. App. 3d 677, 683-84, 373 N.E.2d 694, 700-01.

■■ Defendant was convicted and sentenced for armed violence and attempted murder. Since both convictions are founded upon the same act, firing shots through a window of complainant's home, the State concedes that one of the convictions must be vacated. *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1; see *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

In *King*, the supreme court concluded that a person cannot be convicted of a greater offense and a lesser included offense when multiple offenses arise out of the same series of closely related acts. (66 Ill. 2d 551, 566, 363 N.E.2d 838, 844.) Section 2—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 2—9), which defines "included offense," has been interpreted to mean that an offense is a lesser included offense only if the greater offense charged contains all of the elements of the lesser included offense plus some additional elements. *People v. Kahl* (1978), 63 Ill. App. 3d 703, 380 N.E.2d 487.

Defendant argues that the attempted murder conviction should be vacated because here attempted murder is a lesser included offense of armed violence. We agree.

As its elements, the offense of armed violence requires the use of a dangerous weapon in the commission of a felony. If the particular elements of the specified felony are considered to be necessary elements of the armed violence charge, attempted murder, in this case, would be the included offense because armed violence also requires the use of a

dangerous weapon. We believe that this is the correct approach since the armed violence charge must be supported by proof that defendant committed the underlying felony. See *People v. Jackson* (1978), 57 Ill. App. 3d 809, 373 N.E.2d 583; but see *People v. Sass* (1979), 73 Ill. App. 3d 554, 392 N.E.2d 399; *People v. Leggett* (1971), 2 Ill. App. 3d 962, 275 N.E.2d 651.

Application of this approach here, moreover, is not inconsistent with the apparent purpose of the armed violence statute; that is, a means to enhance the penalty for the underlying felony when a dangerous weapon is used in its commission. In this case, the maximum term of imprisonment for both armed violence and attempted murder is 30 years. However, we note that the same analysis for determining the lesser included offense would not be valid where the felony supporting the armed violence charge carried a penalty greater than the offense of armed violence, as in the case of murder. The result of such analysis would be untenable and contrary to the purpose of the armed violence statute.

Article 33A—1 of the Criminal Code of 1961 (Ill. Rev. Stat., 1978 Supp., ch. 38, art. 33A—1) provides in part:

"§33A—1. Definitions) (a) * * * A person is considered armed with a dangerous weapon for purposes of this Article, when he carries on or about his person or is otherwise armed with a category I or category II weapon. (b) A category I weapon is a * * * rifle, * * *.

* * *

§33A—2. Armed violence—Elements of the offense. A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law.

* * *

§33A—3. Sentence.) (a) Violation of Section 33A—2 with a Category I weapon is a Class X felony. (b) Violation of Section 33A—2 with a Category II weapon is a Class 2 felony or the felony classification provided for the same act while unarmed, whichever permits the greater penalty."

The information charging defendant with armed violence states:

"[Defendant] while armed with a deadly weapon, to-wit: 1. one .22 caliber rifle, commit the offense of attempt (murder) a felony as defined by Illinois law to-wit: Chapter 38, Section 8—4, and Chapter 38, Section 9—1, Illinois Revised Statutes, in violation of Chapter 38, Section 33A—2, Illinois Revised Statutes."

Defendant argues that the class of weapon involved in the commission of the underlying felony is an essential element going to the substance of the felony of armed violence. Therefore, since the information does not allege that the weapon used is a category I weapon,

it was insufficient to charge a Class X felony. Defendant argues further that he was entitled to a jury finding on the class of weapon that was involved. For these reasons, defendant submits that his sentence should be reduced to that prescribed for a Class 2 felony.

The State maintains that an armed violence charge must allege as an essential element only that defendant was armed with a dangerous weapon and does not have to include the category of the weapon. The State contends that use of the dangerous weapon is an element, not the category of the weapon; the categorization is pertinent only to the trial court's sentencing determination. The State maintains further that defendant is not entitled to a jury finding on the category of the weapon because the type of weapon is not in doubt.

In *People v. Clutts* (1976), 43 Ill. App. 3d 366, 356 N.E.2d 1367, the defendants were charged with the sale of 50,000 amphetamine tablets, but the indictment did not allege the gram amount. At trial, the defendants moved to dismiss the indictment, claiming that the gram amount was a necessary element in charging a Class 1 felony. The trial court held that although the evidence adduced was sufficient to prove a Class 1 felony, the indictment was insufficient to charge a Class 1 felony. (Sections 401(a), (b) of the Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, pars. 1401(a), (b)) provided that any person who knowingly delivers 200 grams or more of amphetamines is guilty of a Class 1 felony. Subsection (c) provided that the delivery of any other amounts of a nonnarcotic controlled substance is a Class 3 felony.) The appellate court affirmed the reduction of the charge to a Class 3 felony.

On appeal the State argued, similar to the State's argument here, that a gram amount is not an essential element to be alleged and that the indictment was sufficient to inform defendants both of the crime charged and the class of the offense. The *Clutts* court disagreed and determined that weight is an essential element going to the substance of the charge, and one affecting the degree of punishment. Therefore, the court reasoned, the weight must be set out in the indictment in order for the indictment to charge the offense and support a conviction. 43 Ill. App. 3d 366, 368-70, 356 N.E.2d 1367, 1370, citing *People v. Kadlec* (1974), 21 Ill. App. 3d 289, 313 N.E.2d 522, and *Gonzales v. State* (Tex. Crim. App. 1975), 530 S.W.2d 570, among other authorities.

In so holding, the *Clutts* court enunciated a stricter standard for determining the sufficiency of an indictment. The indictment must set forth all of the elements necessary to charge a Class 1 felony in order for an indictment to withstand attack where the issue was first raised in the trial court. For this reason, the court discounted the State's argument that the indictment sufficiently apprised defendant of the offense charged. See *People v. Strait* (1978), 72 Ill. 2d 503, 381 N.E.2d 692.

The State attempts to distinguish *Clutts* by pointing out that under the Controlled Substances Act, the class of the offense, which is determined by the weight of the substance, and the elements of the offense are contained in the same section of the statute; whereas, the definition of armed violence that specifies the categories of dangerous weapons, the elements of the offense, and the sentencing provision are contained in separate statutory sections. This is an unconvincing point of distinction since the effect of the classification in both instances is the same. Under the Controlled Substances Act, the amount of the drug determines the class of the offense, and the class determines the sentence. Likewise, the category of the weapon, as defined in the armed violence statute, determines the class of the offense, and the class determines the sentence.

■ We find *Clutts* to be persuasive and conclude that the character of the weapon is an element that must be alleged by the State for an information to charge and support a conviction for the greater classification of the offense when the defect has not been waived in the trial court. The State here has described specifically the dangerous weapon in the information, and, by so doing, the element has been alleged sufficiently. The reasoning of *Clutts* does not necessitate that the information also has to allege that a rifle is a category I weapon. In *Clutts*, the weight of the controlled substance that determined the classification of the offense was not specified in the indictment, a nonstatutory description was given. Here, the type of weapon that determines the classification of the offense was specified by the State in the information. This is not a case where the State merely alleged that a dangerous weapon was used in the commission of the underlying felony.

The instruction that was submitted to the jury on the armed violence count did not require the jury to find that defendant had committed attempted murder while armed with a rifle, a category I weapon. The instruction only required the State to prove that defendant was armed with a dangerous weapon. The jury returned a verdict that found defendant "guilty of the crime of armed violence."

■ While defendant may have been entitled to a jury finding on the category of weapon, since it is an essential element of the offense (see *People v. Kadlec* (1974), 21 Ill. App. 3d 289, 313 N.E.2d 522), defendant waived the defect in the instruction and the verdict form by failing to object before they were tendered to the jury. (See *People v. Clark* (1979), 73 Ill. App. 3d 85, 391 N.E.2d 576; *People v. Piehl* (1972), 6 Ill. App. 3d 296, 285 N.E.2d 612.) Moreover, the defect does not qualify as an exception under Supreme Court Rule 451(c) (58 Ill. 2d R. 451(c)) because it is not a substantial defect. Identification of the weapon that was used in the commission of the offense was not an issue at trial.

Defendant next contends that the trial court abused its discretion in sentencing him to 30 years' imprisonment, the maximum sentence for the offenses of attempted murder and armed violence. Defendant argues that no one was hurt as the result of the shooting, that there were mitigating circumstances in his prior voluntary manslaughter conviction, and that at the time of his arrest he had been employed steadily for two years.

At the sentencing hearing the court stated that it would consider the evidence adduced at trial; the presentence report, subject to deletion; any evidence offered in aggravation or mitigation; and defendant's statement, if he chose to make one.

Defendant's presentence report shows that he has a juvenile record for burglary. His previous adult offenses include robbery, battery, and voluntary manslaughter. He served 8 months of a 1- to 3-year sentence for the robbery; was placed on 1-year conditional discharge for the battery; served 11 months of a 2- to 21-year sentence for voluntary manslaughter; and was discharged from parole on the voluntary manslaughter approximately one year later.

At the time of sentencing, defendant was 24 years old and had been employed for two years at the Danville Housing Authority as a maintenance man.

■■ Beginning with the presumption that the sentence imposed by the trial court was proper (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5— 4.1; *People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59), and in light of the factors that were considered by the trial court in imposing sentence, it is our opinion that the record supports the sentence that was imposed, despite its severity. The factors cited by defendant do not rebut the presumption of propriety.

In addition to attempted murder and armed violence, defendant also was charged by information with two counts of unlawful use of weapons. Count II of the information and the amended information charged that defendant committed unlawful use of weapons in violation of section 24—1(a)(10) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(10)) (possession of a rifle within the corporate limits of Tilton). In addition, both counts charged Class 3 felonies based on defendant's prior conviction of voluntary manslaughter (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(c)).

In a bifurcated trial, defendant was convicted of both unlawful use of weapons' offenses. Defendant moved for a severance because he did not want those parts of the information relating to the voluntary manslaughter conviction and incarceration to be read to the jury. The trial court accepted the jury's verdicts and entered judgment on them. At the sentencing hearing, the trial court refused to sentence defendant on either

unlawful use of weapons' convictions because the court believed that the offenses merged into the armed violence count.

The State argues that the trial court's opinion was erroneous and that the cause should be remanded for sentencing on one of the unlawful use of weapons' convictions. The State acknowledges both unlawful use of weapons' convictions cannot stand because they each arose from a single act. However, the State maintains that count II must be affirmed and that the cause should be remanded for sentencing as a Class 3 felony.

The State correctly maintains that, contrary to the trial court's implication, the unlawful use of weapons' conviction that was based on possession of a firearm in a vehicle within the corporate limits is not a lesser included offense of armed violence. The requisite elements for this offense of unlawful use of weapons, as a Class 3 felony, include possession of a gun in a vehicle within corporate limits and conviction of a prior felony within five years. Since none of these factors are elements for the conviction for armed violence based on attempted murder, the unlawful use of weapons, as set out in count II, is not a lesser included offense of the armed violence conviction.

Defendant argues that even if the trial court erred in vacating the unlawful use of weapons conviction, the prosecution cannot ask now for reinstatement of that conviction without running afoul of defendant's protection against double jeopardy. Defendant cites *Sanabria v. United States* (1978), 437 U.S. 54, 57 L. Ed. 2d 43, 98 S. Ct. 2170, in support of his contention that the trial court's order vacating the conviction acts as an acquittal of the offense and bars subsequent prosecution. In *Sanabria*, the United States Supreme Court refused to permit reprosecution of a defendant after the trial court erroneously granted a motion for judgment of acquittal.

■ Here, the trial court did not vacate defendant's conviction for unlawful use of weapons; rather, the trial court refused to sentence defendant for the offense. Moreover, sentencing on remand is not tantamount to reprosecution. For this reason, *Sanabria* is distinguishable.

■ As stated previously, multiple convictions and sentences are proper unless the offenses arose from the same physical act. Offenses arising out of the same series of incidental or closely related acts, which are not lesser included offenses, are separate, and entry of convictions with concurrent sentences is proper. (*King*.) In *King*, the supreme court defined "act" to mean any overt or outward manifestation which will support a different offense (66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45). Where a defendant has been convicted properly of more than one offense and only one sentence was imposed, upon appeal by the defendant, the State may request the appellate court to remand the cause for imposition of separate

sentence on an additional proper conviction. *(People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540.) In *Scott,* the supreme court determined that the effect of the appellate court's remanding order for the imposition of. sentence is to complete the circuit court's order and render the judgment final (69 Ill. 2d 85, 88-89, 370 N.E.2d 540, 542). In *People v. Lucien* (1978), 66 Ill. App. 3d 280, 383 N.E.2d 735, the court stated: "[T]his court's recent holding in *People v. Dean* (1978), 61 Ill. App. 3d 612, 378 N.E.2d 248, that a trial court lacks authority to fail to impose any sentence on a properly entered judgment of conviction, would indicate that this court is required to correct any such error." 66 Ill. App. 3d 280, 291, 383 N.E.2d 735, 744.

■■ We agree with the State that the unlawful use of weapons offense, based on possession of a firearm in a vehicle within corporate limits, is not included within the offense of armed violence in this case. This offense of unlawful use of weapons, albeit closely related to the act constituting armed violence, was a separate act; therefore, failure to sentence defendant for unlawful use of weapons was error. Remanding the cause for sentencing on the unlawful use of weapons conviction is proper.

■■ Ordinarily, defendant's prior felony conviction and imprisonment for voluntary manslaughter would qualify as an aggravating factor in sentencing pursuant to section 24—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(b)). However, on remand defendant should be sentenced for a Class A misdemeanor, rather than a Class 3 felony, because the fact of defendant's felony conviction was not presented to the jury. This determination is consistent with the supreme court's holding in *People ex rel. Carey v. Pincham* (1979), 76 Ill. 2d 478.

In *Pincham,* the Illinois Supreme Court, on the State's petition for a writ of mandamus, vacated the circuit court's order for a bifurcated trial. Defendant was charged with two counts of unlawful use of weapons. Count I was based on possession of a loaded handgun, a misdemeanor; the second count was based on the same possession, but charged the commission of a felony because the offense occurred within five years of defendant's release from the penitentiary on another felony charge. Defense counsel objected to the jury being informed of defendant's prior conviction and incarceration. Counsel offered to stipulate to the prior conviction. The trial court decided to conduct a bifurcated trial in which the jury would first decide whether defendant possessed a gun, and then, if the jury returned a verdict of guilty, they would hear evidence as to defendant's prior conviction and incarceration. In vacating the trial court's order, the supreme court stated:

"The decisions of this court have established that proof of the prior conviction is necessary to a conviction on the felony charge. [Citations.] These decisions have been followed by the appellate court, and in *People v. Crawford* (1978), 59 Ill. App. 3d 211, the

court held that where proof before the jury established only possession of a weapon, the conviction was for a misdemeanor only in spite of a stipulation out of the presence of the jury as to the defendant's prior conviction and incarceration. That court held that proof of the aggravating circumstances must come before the finding of guilt or innocence, which is consistent with the decisions of this court." *People ex rel. Carey v. Pincham* (1979), 76 Ill. 2d 478, 479.

For the foregoing reasons, the attempted murder conviction and sentence are vacated, the armed violence conviction and sentence are affirmed, and the cause is remanded to the circuit court for action consistent with this opinion.

Vacated in part, affirmed in part, cause remanded.

REARDON, P. J., and GREEN, J., concur.