THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JIMMIE DALE WINTERS, Defendant-Appellant.

Second District   No. 2—85—0970

Opinion filed December 31, 1986.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klinger, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Jimmie Dale Winters, was charged by information filed in the circuit court of Winnebago County on June 14, 1985, with the offense of attempted murder (Ill. Rev. Stat. 1985, ch. 38, par. 8—4(a)), in that on June 2, 1985, acting with the intent to kill Bobby Mangruem, he knowingly took a substantial step toward doing so by stabbing Mangruem with a knife. He was convicted of that offense following a bench trial and sentenced to a 10-year term in the Department of Corrections. He contends here he was not proved guilty beyond a reasonable doubt.

Defendant had been married to Georgia Winters for eight years and had three children by her. However, defendant and his wife were separated, and Georgia had been living with the victim, Bobby Mangruem, for two years along with the children, Rosalin, age seven, Jimmiterice, age six, and Deshaun, age two.

The defendant was released from jail in Sycamore, Illinois, and went to Rockford to visit his children. He was feeling bad and was "against him being there," referring to Mangruem's living with his wife. He felt that the children acted differently toward him and seemed reluctant to talk to him. He attributed these changes to Mangruem. When he saw Mangruem on Saturday, the day before the stabbing, he told him "that he better leave my old lady alone." Mangruem then "shifted a rifle" and screamed that he had better get away. Defendant's responses on cross-examination suggested that it was af-

ter this confrontation that he decided to hurt Mangruem the next day with the knife which he kept in his sock. He said he wanted to hurt Mangruem because "I had to let him know that I meant what I said."

Defendant returned to his wife's residence on Sunday with his knife stuck in his pants above his right rear pocket, instead of in his sock as he had carried it the day before. Mangruem testified that on that afternoon, he was sitting in a straightback kitchen chair on a small patio near a garbage stall located behind the building where he and defendant's wife and children resided. Two-year-old Deshaun Winters also was in the vicinity. At about 2:30 the defendant arrived.

Mangruem said that the defendant approached and asked where his daughter, Jimmiterice, was. Mangruem told him that she was in the house. The defendant waited a few moments, repeated his question and received the same reply. The defendant then pulled a knife with a 6-inch blade from his right rear pocket, held it up over his right shoulder, and rushed toward Mangruem. He cut him over the right eye and on top of his head.

Mangruem then saw the knife heading toward his upper left chest. He blocked it with his right arm and was stabbed in the forearm. Mangruem fell off the chair, and when he was trying to get up off the ground, he was stabbed twice in the side. Both times the knife actually went into his body. At this point, a next door neighbor, Mathew Simpson, hollered and told the defendant to get away. The defendant raised up to see who it was, and Mangruem tried to crawl away. The defendant then stabbed Mangruem in the center of the back as he was trying to get away. Mangruem crawled into the door of the neighbor's house, and the door was slammed shut.

Mangruem had surgery at Rockford Memorial Hospital and was kept in the hospital for six days, including one day of intensive care. He suffered a punctured lung and required chest tubes for drainage. He had an operation on his back, and the surgical scar extended from the upper middle back around to the side. His injuries required 26 stitches and 40 to 50 clamps. Mangruem said he will not be able to lift his right arm because of the injury to it.

Rockford police detective Daniel Gray testified that on June 2 at about 5:30 p.m., he spoke with the defendant regarding the incident. In the written statement that Gray obtained from the defendant, the defendant did not deny having stabbed Mangruem. Gray said that when he asked the defendant if he had been trying to kill Mangruem, the defendant responded that he had tried to hurt Mangruem and knew that he had done so.

As noted above, after hearing this evidence and argument, the

court found the defendant guilty of attempted murder.

The defendant argues the State's evidence proves no more than that he attacked Bobby Mangruem with intent to harm him and that he succeeded in doing so. He points to the fact that his stated lack of intention to kill Mangruem was not rebutted by proof that he verbalized a contrary intent prior to or following the incident and, further, that the time and place of the assault belie the allegation that he intended to slay Mangruem. Finally, he points to the fact that he did not kill Mangruem despite the fact that he could easily have done so considering the weapon used in the attack. He finds supportive two cases, *People v. Thomas* (1970), 127 Ill. App. 2d 444, and *People v. Mitchell* (1984), 105 Ill. 2d 1, in which the defendants were found not guilty of attempted murder.

The State contends its evidence was sufficient to prove the defendant guilty of attempted murder beyond a reasonable doubt where the defendant's intent to kill was readily inferable from the surrounding circumstances, including the character of the assault and the use of a deadly weapon. It finds supportive *People v. Burdine* (1978), 57 Ill. App. 3d 677, *People v. Howard* (1979), 78 Ill. App. 3d 858, and *People v. Coolidge* (1963), 26 Ill. 2d 533.

■■ ■ In order to be found guilty of attempt, one must be proved to have intended to commit a specific offense. (*People v. Coleman* (1985), 131 Ill. App. 3d 76.) "Absent the specific intent to commit a specific offense, the crime of attempted murder and other forcible felonies, such as burglary, robbery or rape, could be commingled. It must be remembered '[t]here is no such criminal offense as an attempt to achieve an unintended result.' *People v. Viser* (1975), 62 Ill. 2d 568, 581." (*People v. Trinkle* (1977), 68 Ill. 2d 198, 202.) Intent to kill an individual is an essential element of the offense of attempted murder (*People v. Johnson* (1984), 123 Ill. App. 3d 1008; *People v. Bryant* (1984), 123 Ill. App. 3d 266); an intent to accomplish only great bodily harm is insufficient for the offense of attempted murder (*People v. Childs* (1981), 101 Ill. App. 3d 374).

■■ Intent is a state of mind which, if not admitted, can be established by proof of surrounding circumstances, including the character of the assault, the use of a deadly weapon, and other matters from which an intent to kill may be inferred. (*People v. Koshiol* (1970), 45 Ill. 2d 573, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209; *People v. Maxwell* (1985), 130 Ill. App. 3d 212.) Such intent may be inferred when it has been demonstrated that the defendant voluntarily and willingly committed an act, the natural tendency of which is to destroy another's life. (*People v. Coolidge* (1963),

26 Ill. 2d 533, 537; *People v. Myers* (1980), 83 Ill. App. 3d 1073, 1076, *aff'd in part, rev'd in part on other grounds* (1981), 85 Ill. 2d 281.) Once the elements of attempt are complete, abandonment of the criminal purpose is no defense. (85 Ill. 2d 281, 290.) It is the function of the trier of fact to determine the existence of the requisite intent, and that determination will not be disturbed on review unless it clearly appears there exists a reasonable doubt as to the defendant's guilt. *People v. Bryant* (1984), 123 Ill. App. 3d 266.

We find the evidence adduced below leaves no reasonable doubt as to the defendant's guilt and that the defendant's reliance on *People v. Thomas* (1970), 127 Ill. App. 3d 444 and *People v. Mitchell* (1984), 105 Ill. 2d 1, is misplaced. In *Thomas,* the defendant entered the complainant's apartment and confronted her in the dining room where she was nursing her baby, and her other two young children were watching television. He was holding a knife; he ordered her to shut up several times and repeatedly threatened to kill her. He banged her head against a chest of drawers, hit her in the head, and picked at her face with his knife. He "stuck" her in the shoulder with the knife before unzipping his pants and raping her. Afterward, he ransacked a dresser, taking a dollar and some change. The complainant received cuts on several fingers, the right shoulder, her left side, her stomach, and she was slashed and scraped all over her face. In considering whether the defendant properly received separate sentences for both attempted murder and aggravated battery, the court determined that the record would not support convictions for both those offenses and, given the opportunity for murder which the defendant had, there was insufficient proof that the defendant intended or attempted to commit the crime. Accordingly, it reversed his conviction for that offense.

Despite the defendant's repeated threats to kill the complainant in *Thomas,* the wounds incurred by her belied his intention to do so where they were no more than superficial cuts "indicating not only an unexercised opportunity to murder but also a type of attack the direct and natural tendency of which was not to destroy life." (*People v. Burdine* (1978), 57 Ill. App. 3d 677, 684.) In further distinguishing *Thomas,* the court in *People v. Burdine* found it notable that the descriptive terms used in that opinion did not include the term "stab." *Burdine* upheld the defendant's conviction of attempted murder, rejecting the defendant's argument there that the shotgun blast to the victim's leg was carefully measured to avoid killing him. *Inter alia,* the court considered there was no evidence that the defendant was an expert in the use of guns, that the close-range blast could be expected to cause severe, potentially fatal, blood loss, and that the victim was

left in the alley with a severe wound and obvious profuse bleeding. Under those circumstances, the court found it was not unreasonable for the jury to have found an intent to kill. 57 Ill. App. 3d 677, 684-85.

In the case at bar, and despite the fact the defendant's stated intention was only "to hurt" Mangruem, the totality of the wounds inflicted were such as would have had the natural tendency to destroy Mangruem's life. He sustained not only superficial scrapes and cuts, but stab wounds deep enough to puncture a lung, to require surgery, and to cause permanent disability. Notwithstanding defendant's stated intention, we find the totality of the circumstances of the attack allow the clear inference of an intent to kill.

We find the defendant's choice of time and place for the attack does not militate against a finding of such intent. We note that the attempted murder upheld in *People v. Howard* (1979), 78 Ill. App. 3d 858, cited here by the State, took place at the prospective victim's home while it was still light out. Based on the demeanor and conduct of the defendant shown by the record in this case, it is evident the defendant felt justified in pursuing his chosen course of action in order to show Mangruem "[he] meant what [he] said." Hiding his identity under cover of darkness or by way of surprise attack at another location would not have served his admitted purpose. It was apparently a contest of machismo in which anonymity played no part.

We likewise find distinguishable *People v. Mitchell* (1984), 105 Ill. 2d 1, also relied on by the defendant. In *Mitchell*, the supreme court upheld the decision of the appellate court vacating the defendant's convictions and sentences for the attempted murder of her 16-month-old daughter. The evidence in that case showed that the defendant had had an argument with her live-in boyfriend during the afternoon of August 22. She struck him several times and continued to vent her anger and frustration by hitting Shannon, her daughter, several times with her hand, fist, and a belt. Shannon fell down several times, and the defendant picked her up in order to strike her again. Afterward, the defendant stated Shannon lay down for awhile but then began to play. At 11 p.m., Shannon was put to bed; she had several bruises but otherwise seemed normal. The next morning, the defendant became nervous because Shannon was not minding and was getting into cupboards, and she struck the child with her open hand several times. The defendant then put Shannon in the high chair and, shortly afterward, the child apparently had a seizure and passed out. When Shannon became unconscious, the defendant placed a cool cloth on the child's head for about 15 minutes and, when the child failed to revive,

the defendant took her to the hospital. When the police asked the defendant why she had beaten the child, she further explained that she wanted to give the child away, that the child reminded her of its father, whom defendant hated, and that she was taking her anger out on the child.

In upholding the appellate court's decision to vacate the attempted murder convictions, the court stated:

> "While [the defendant] undoubtedly repeatedly struck her child, we do not believe that the circumstances of this striking, without more, are sufficient to establish the required intent, particularly in view of defendant's explanations for her behavior. There was ample opportunity for her to complete her crime if, in fact, she intended to kill the child. Further, following Shannon's loss of consciousness, defendant applied a cool cloth and ultimately took her to the hospital for emergency medical attention, actions which are not consistent with an intent to murder. This court has previously acknowledged that abandonment of the intent to kill, once the elements of attempted murder are complete, is no defense to the crime. [Citation.] Here, however, considering all of the circumstances, the proof is, in our judgment, simply insufficient to establish beyond a reasonable doubt that defendant possessed the requisite intent to kill. [Citations.]" *People v. Mitchell* (1984), 105 Ill. 2d 1, 9-10.

In contrast here, Bobby Mangruem was not the incidental victim of the defendant's misdirected anger and frustration; he was the intended victim. The defendant plainly admitted he did not like Mangruem living with his family, and he blamed Mangruem for the change in his children's attitude toward him. He warned Mangruem to "leave his old lady alone," and when Mangruem not only ignored this directive, but "shifted a rifle" toward him, defendant stated he had to show Mangruem he meant what he said.

Although the *Mitchell* court acknowledged that abandonment of the intent to kill is no defense to the crime once the elements of attempted murder are complete, it nevertheless took into account the defendant's application of a cool cloth to Shannon when she became unconscious and the fact that the defendant took Shannon to the hospital. In contrast here, after Mangruem had been cut above the eye and on the head and stabbed in the right arm when he attempted to protect his chest, he fell off the chair on which he had been sitting. Defendant offered no aid, but stabbed the defenseless Mangruem twice in the side. When Mangruem's next-door neighbor interceded, distracting the defendant's attention, Mangruem began to crawl away.

Defendant did not at that time abandon his criminal purpose but, rather, stabbed the already severely wounded Mangruem in the center of his back just before Mangruem was able to reach the safety of his neighbor's house.

In *People v. Maxwell* (1985), 130 Ill. App. 3d 212, 217, it was stated that: "[t]he fact that an assailant, armed with a deadly weapon, chooses to flee when [the] victim cries for help, rather than choosing to inflict a fatal injury, does not negate the existence of the intent to kill." Given the record at bar, we see no evidence that the defendant ever abandoned his criminal purpose and that he did all he could to inflict a fatal injury before Mangruem made his way to safety.

■ In sum, we find the evidence raises no reasonable doubt of the defendant's guilt of attempted murder. Although the defendant points out the court's ambivalently worded finding on the question of whether he possessed the specific intent to kill, it is well established that it is the court's judgment, not its reasoning, which is the subject of review (*People v. Norks* (1985), 137 Ill. App. 3d 1078; *People v. Merz* (1984), 122 Ill. App. 3d 972) and with that we find no fault.

Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

LINDBERG and REINHARD, JJ., concur.