THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LANDON SPRAWLS, Defendant-Appellant.

First District (3rd Division)  No. 1—87—2205

Opinion filed October 17, 1990.—Rehearing denied November 26, 1990.

338

Randolph N. Stone, Public Defender, of Chicago (Karen E. Tietz, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Patrick M. Brady, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant Landon Sprawls and codefendant Michael Johnson were each charged with murder, armed robbery and unlawful restraint. Prior to Sprawls' trial, Johnson pled guilty and was sentenced to 60 years' imprisonment. Following a jury trial, Sprawls was found guilty and sentenced to a term of natural life for murder, a 60-year extended term for armed robbery and three years for unlawful restraint, with all sentences to run concurrently. Johnson is not a party to this appeal. On appeal, defendant Sprawls argues that (1) the trial court abused its discretion in sentencing him to a term of natural life imprisonment for murder; (2) the trial court erred in restricting the scope of cross-examination; and (3) the State improperly used peremptory challenges to strike African-American jurors because of their race. We reverse and remand for a *Batson* hearing.

The following evidence was adduced at trial. On November 22, 1983, Derrick Tillman spent the evening with the victim Lewis Brown at his Oak Park apartment. At approximately midnight, defendant and Michael Johnson came to the apartment. Defendant and Michael Johnson visited with the victim and Tillman for about 1½ hours before they departed. Tillman spent the night at Brown's apartment and left the following day at approximately 11 a.m. Tillman tried unsuccessfully to reach Brown by telephone for the next several days. When Tillman was unable to reach Brown the following Monday, he and Kathy Brown went to his apartment. When they arrived at Brown's apartment they discovered that, although the interior rear door to the apartment was open, the exterior burglar bars were locked. Tillman contacted the police.

Officer Brian Slowiak of the Oak Park police department responded to the call. After another officer was summoned to remove the burglar bars, Slowiak entered the apartment. Slowiak testified that a search of the apartment revealed bundles of articles, including stereo equipment, stacked in the hallway. When Slowiak entered the bedroom, he found Brown lying facedown on the bed with his hands and feet tied behind him with tape and a cord wrapped around his neck. Brown was dead. The victim had two stab wounds in the middle of his back, and a large kitchen knife found on the bedroom floor was retrieved and inventoried.

Detective Ron Zielke testified that pursuant to his investigation of

the case he received an anonymous tip from the Chicago Crime Commission which indicated that Michael Johnson and Landon Sprawls were Brown's assailants. Zielke subsequently showed Tillman a photo array which contained the pictures of Michael Johnson and defendant's brother. Tillman positively identified Johnson as one of the persons that he met in Brown's apartment. Tillman also told the police that the photo of defendant's brother resembled the other person who visited the apartment with Johnson that evening.

Zielke testified that later that evening, he talked with Rosedell Chester at the Oak Park police department. Chester informed Zielke and later testified at trial that on the Sunday prior to the discovery of Brown's body, he talked with Melvin and Michael Johnson and defendant, who asked to borrow his car. Defendant told Chester that he needed the car to get more equipment from a burglary. Chester testified that he bought a camera from defendant, but refused to loan him his car and told him that it sounded like a home invasion/murder to him. Defendant and Michael Johnson were subsequently arrested.

Defendant later gave oral and court-reported statements in which he admitted his participation in Brown's murder and named Johnson as his accomplice. In his statement, defendant related that he and Johnson originally went to the victim's apartment on November 22, 1983, to rob him, but they left because someone else was present in the apartment. Defendant stated that when they returned on November 26, the victim was alone. Defendant and Johnson watched television with the victim until approximately 3 a.m. After the movie, defendant and the victim went into the bedroom to have sex. However, before they began, defendant pulled a gun on the victim and stated that he was going to rob him. When the victim cried for help, Johnson entered the room and told the victim to "be cool." Defendant and Johnson bound the victim's hands and feet and taped his mouth shut. Finally, they placed a towel over his head and searched the apartment for items to steal. When Johnson and defendant had completed their search of the apartment, they decided that since the victim knew them, he would have to be killed. Johnson retrieved a heavy duty extension cord from the next room, and he and defendant pulled it around the victim's neck until he lost consciousness. When defendant heard the victim making gurgling noises, he got a knife and stabbed him several times.

Melvin Johnson testified that defendant and his brother Michael Johnson told him that they had killed a man named Lewis in Oak Park. Defendant also showed Melvin a pair of boots and a camera which he had taken from the victim's apartment. Melvin further testi-

fied that defendant later tried to convince him and other family members that he did not commit the murder and burglary, but he did not believe his denials. Defendant's girl friend testified that he gave her a radio, which was later identified as the victim's property, but he did not tell her where he had gotten it.

Dr. Robert Krischner of the Cook County medical examiner's office testified that the victim had a stab wound in the right rear portion of his neck about seven inches from his head. He further testified that there were also two stab wounds on the left side of the neck as well as neck wounds consistent with strangulation by an electrical cord. Dr. Krischner opined that the victim was still alive when stabbed and that he died as a result of ligature strangulation in association with multiple stab wounds of the neck and back.

Defendant testified on his own behalf. Defendant recanted his prior inculpatory statement and testified that on November 27, 1983, he was visited by Michael and Melvin Johnson and Rosedell Chester. When Rosedell arrived at defendant's house, he was carrying a bag in his hand. There were boots in the bag which defendant purchased for $5. Defendant also testified that he bought a radio from Michael Johnson which he gave to Kathy Maddox. Defendant stated that he did not ask either man where they got the items.

Following argument and instructions, the jury returned verdicts of guilty of murder, unlawful restraint and armed robbery. Defendant waived the jury for the death penalty hearing. The court found defendant eligible for the death penalty and held a hearing to determine whether it should be imposed. Following the hearing, the court sentenced defendant to a term of natural life for murder, an extended-term sentence of 60 years for armed robbery and three years for unlawful restraint. This appeal followed.

Defendant argues that the trial court abused its discretion in sentencing him to a term of natural life imprisonment for murder. Defendant specifically argues that the trial court (1) failed to consider his potential for rehabilitation and factors in mitigation; (2) erroneously considered facts which evidenced an element of the offense in aggravation; and (3) improperly considered his alleged lack of remorse as a factor in aggravation. We disagree.

■ Section 5—8—1(a)(1)(b) of the Unified Code of Corrections allows for a term of natural life imprisonment in a murder case "if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(b).) When a trial court imposes a sentence that is within statutory limits, it may not be altered upon re-

view absent an abuse of judicial discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 501, 431 N.E.2d 344, 348.) At sentencing, a court may consider the force employed and the manner in which the victim's death was brought about. (*People v. Fenderson* (1987), 157 Ill. App. 3d 537, 548, 510 N.E.2d 479, 486.) In addition, the court may consider the lack of a penitent spirit in determining the appropriate sentence to be imposed upon a defendant, since this is a factor which may have a bearing on the defendant's potential for rehabilitation. *People v. Speed* (1984), 129 Ill. App. 3d 348, 349, 472 N.E.2d 572, 573.

In the present case, the record reveals that during sentencing, the trial court heard and considered both the State's and defense counsel's arguments in aggravation and mitigation. The court found that during the three years that defendant's case had been before him and following the jury's finding of guilty, defendant failed to show any remorse. The court further found that the victim's death was accomplished when he was stabbed after being strangled and that defendant administered the stab wounds. Under these circumstances, we do not believe that the trial judge can be said to have abused his discretion in sentencing defendant to natural life imprisonment without parole. See *People v. La Pointe* (1981), 88 Ill. 2d 482, 501, 431 N.E.2d 344, 352.

Defendant also argues that the trial court erred in restricting the scope of his cross-examination of the State's witness, Officer James Leahy. We disagree. The decision to limit the scope of cross-examination is within the discretion of the trial court, and on review, this decision is not reversible unless it involved a clear abuse of discretion resulting in manifest prejudice to the defendant. (*People v. Trolia* (1982), 107 Ill. App. 3d 487, 500-01, 437 N.E.2d 804, 814.) Further, even if a trial judge commits error by restricting cross-examination of a witness, such error will not warrant reversal unless there remains a reasonable doubt whether defendant has been prejudiced thereby or the outcome of the trial would have been different had the error not been made. *People v. Langston* (1981), 96 Ill. App. 3d 48, 51, 420 N.E.2d 1090, 1092.

In the present case, the trial court did not err in restricting the cross-examination of Officer Leahy. Defendant sought to reveal through Officer Leahy's testimony that a bag containing 113 grams of white powder was found in the victim's apartment and that the police did not analyze this substance to determine its content. According to defense counsel, this testimony would have furthered defendant's theory of defense in that it helped to establish that (1) the victim may

have been a drug dealer whom others may have wanted to rob and kill and (2) the failure to test the substance is indicative of a poor police investigation. However, the court properly found that in the absence of other evidence to support defendant's speculative theory that the victim was a drug dealer, the prejudicial nature of the evidence outweighed its probative value. In addition, defendant was not precluded from introducing evidence via other witnesses regarding the quality of police investigation of the crime. We therefore conclude that the trial court did not abuse its discretion in limiting the scope of defendant's cross-examination of Officer Leahy.

■■ Defendant filed a *pro se* brief in which he alleged additional trial errors, including ineffective assistance of counsel, lack of probable cause to arrest, as well as failure of the State to prove him guilty beyond a reasonable doubt. These alleged errors were not preserved for review either at trial or by post-trial motion. As a result, review of these issues is waived. However, assuming, *arguendo*, that defendant did not waive review of these issues, upon review we find that they are without merit and fail to rise to the level of plain error. *People v. Enoch* (1988), 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124, 1131-32.

■■ The final contention we address is defendant's claim that, during the *voir dire*, the State used its peremptory challenges to exclude African-Americans from the jury solely because of their race. (*Batson v. Kentucky* (1986), 476 U.S. 79, 90, 90 L. Ed. 2d 69, 83, 106 S. Ct. 1712, 1719.) Although defense counsel objected to the State's peremptory challenges of African-Americans during the *voir dire* and the court ruled on the objections, we believe the record reflects that the "hearing" in regards to the issue of alleged racial discrimination by the State does not pass constitutional muster. The trial court must consider all relevant circumstances in deciding whether a defendant has established a *prima facie* case of racial discrimination in the selection of the jury when the issue arises. *People v. McNeal* (1987), 160 Ill. App. 3d 796, 806, 513 N.E.2d 897, 904.

■■ Under the circumstances, we remand this case with directions that defendant be allowed to present evidence in the trial court supporting his contention that the State excluded African-Americans from the jury solely because of their race. If the trial court finds that defendant has established a *prima facie* case that the State systematically excluded African-Americans from the jury solely because of their race, the State must come forward with neutral explanations for its use of peremptory challenges. If the State does not come forward with neutral explanations, the defendant's conviction is vacated and defendant is to receive a new trial. If, however, the State presents

what are determined by the trial court to be neutral explanations sufficient to rebut defendant's *prima facie* case of racial discrimination or if the trial court determines that defendant has not established a *prima facie* case, the defendant's conviction is affirmed. *People v. Andrews* (1989), 132 Ill. 2d 451, 463, 548 N.E.2d 1025; *McNeal*, 160 Ill. App. 3d at 806.

Remanded with directions.

CERDA, P.J., and FREEMAN, J., concur.