THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RO-ZENE BURRAGE *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 1—91—3560, 1—92—0009 cons.

Opinion filed December 27, 1994.

DiVITO, P.J., specially concurring.

Rita A. Fry, Public Defender, of Chicago (Richard E. Gade, Assistant Public Defender, of counsel), for appellant Rozene Burrage.

James W. Reilley & Associates, of Des Plaines, for appellant Allen Redmond.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Latisha Foster, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

Defendants Rozene Burrage and Allen Redmond were arrested and charged with attempted first degree murder, armed violence and two counts of aggravated battery. After a joint bench trial, they were found guilty of attempted first degree murder and armed violence. The trial court sentenced Burrage to 22 years' imprisonment and Redmond to 20 years' imprisonment.

Both defendants appeal their convictions and sentences. Redmond contends that: (1) his conviction for attempted first degree murder must be vacated because (a) the attempted first degree murder offense is based on the same physical act as the armed violence offense, (b) attempted first degree murder is a lesser included offense of armed violence, (c) the trial court erred in finding him accountable for the actions of his codefendant Burrage, and (d) he did not possess the specific intent to murder the victim; and (2) he was not proven guilty of attempted first degree murder and armed violence beyond a reasonable doubt. Burrage contends that: (1) the judgment of conviction on the armed violence count must be vacated because it is based on

the same physical act as the attempted first degree murder count; and (2) she was denied a fair sentencing hearing because the trial court considered improper factors in aggravation. Both defendants argue that they are entitled to a resentencing hearing because the trial court may have been influenced in determining their sentences by both convictions. For the reasons set forth below, we affirm in part and vacate in part.

On January 25, 1989, at approximately 9:30 p.m., Kimberly Hinton was in the kitchen of her apartment at 1533 West 51st Street, Chicago, Illinois. Kimberly and other adults were playing cards. After hearing gunshots ring out, Kimberly hurried to her living room to check on the safety of children who were watching television. Upon entering the living room, Kimberly observed her nephew, three-year-old Donte Hinton, sitting on a couch holding his head. Donte was bleeding from a gunshot wound. Subsequently, Donte required brain surgery for the removal of a bullet.

Solomon Hicks and Curtis Hicks both testified at trial that on January 25, 1989, shortly after 9:30 p.m., they were walking with a friend southbound on Justine Street towards 51st Street. They heard a gunshot and looked in the direction of the sound. They observed Burrage on the west side of Justine Street, about two or three houses south of an alley facing north. Burrage fired two or three shots in the direction of Andre, also known as Dre, who was standing in a stairwell of the 1533 West 51st Street building that faced Justine.

A few seconds later, Redmond drove an automobile out of an alley and stopped in the middle of Justine Street. Redmond positioned himself on the window sill of the driver's side of the automobile and fired three shots toward the building. Thereafter, Redmond drove the automobile south on Justine, Burrage entered the automobile and Redmond drove away from the scene.

Redmond first argues that his conviction for attempted first degree murder must be vacated because it arises out of the same physical act as the offense of armed violence and it is a lesser included offense of armed violence. The State argues that Redmond waived the issue of multiple convictions for one act by failing to raise the issue before the sentencing court (see *People v. Clark* (1987), 160 Ill. App. 3d 877, 513 N.E.2d 937) and failing to seek reconsideration of his sentence (see *People v. Macke* (1992), 224 Ill. App. 3d 815, 587 N.E.2d 1113). The State further argues that the trial court did not sentence Redmond for the armed violence offense; hence, there is no final judgment on that offense and there can be no appeal. (See *People v. Flores* (1989), 128 Ill. 2d 66, 538 N.E.2d 481, *cert. denied* (1990), 497 U.S. 1031, 111 L. Ed. 2d 799, 110 S. Ct. 3291.) Lastly, the State argues

that attempted first degree murder is not a lesser included offense of armed violence.

■ Notwithstanding Redmond's failure to raise these issues at his sentencing hearing, a reviewing court may review an issue not properly preserved if it involves an error affecting a substantial right of the defendant. (*People v. Enoch* (1988), 122 Ill. 2d 176, 199, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) Sentencing issues are regarded by courts as matters affecting a defendant's substantial rights and, thus, have been excepted from the doctrine of waiver. (*People v. Lindsay* (1993), 247 Ill. App. 3d 518, 527, 617 N.E.2d 389, *appeal denied* (1993), 153 Ill. 2d 565, 624 N.E. 2d 812.) We further observe that prior to the supreme court's decision in *People v. Lewis* (1994), 158 Ill. 2d 386, 634 N.E.2d 717, the courts in this district were divided on the issue of whether a defendant's failure to file a post-sentencing motion pursuant to section 5—8—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(c) (now 730 ILCS 5/5—8—1(c) (West 1992)) resulted in a waiver of the alleged error for appeal purposes. *Lewis*, however, overruled *People v. Macke* (1992), 224 Ill. App. 3d 815, 587 N.E.2d 1113, relied on by the State in support of its waiver argument; *Lewis* held that the statutory provision giving defendants 30 days to move for reconsideration of a sentence is permissive, rather than mandatory, and should not be viewed as a prerequisite to an appeal of matters relating to sentencing. (*Lewis,* 158 Ill. 2d at 390.) Accordingly, Redmond cannot be said to have waived this issue.

■ We next observe that the parties' confusion over whether the trial court entered final judgment (including the imposition of a sentence) on the finding of guilty on Redmond's armed violence offense arises from the court's rulings at trial and the sentencing hearing. Specifically, at trial the judge stated: "I find both defendants were guilty of the charges of attempt murder and also armed violence and I will enter judgment on Count[s] One [attempted first degree murder] and Two [armed violence]. Counts Three and Four [aggravated battery] will merge with Counts One and Two." At the sentencing hearing the court stated only that it was sentencing Burrage and Redmond to 22 and 20 years' imprisonment, respectively; the court did not specify at the hearing or in the common law record half-sheet entries as to which offense the sentence was imposed. However, as argued by the State, the trial court's order of sentence and commitment clearly indicates that Redmond was sentenced only on the attempted first degree murder offense. Nevertheless, the fact that Redmond was not sentenced on the armed violence offense does not preclude the appeal of that conviction. Generally, absent the

imposition of a sentence, a judgment of guilty in a criminal case cannot be appealed. An exception to this rule exists where, as in the case at bar, there is a proper appeal from the final judgment of another offense. Under these circumstances, a reviewing court may also review an appealed conviction of an offense for which no sentence was imposed. *People v. Frantz* (1986), 150 Ill. App. 3d 296, 300, 501 N.E.2d 966.

It is well settled that a defendant cannot be convicted and sentenced for more than one offense arising out of the same physical act. (*People v. Mack* (1984), 105 Ill. 2d 103, 137, 473 N.E.2d 880; *People v. King* (1977), 66 Ill. 2d 551, 561, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273; *People v. Lilly* (1974), 56 Ill. 2d 493, 495, 309 N.E.2d 1.) We agree with Redmond that the charges of attempted first degree murder and armed violence were based on one physical act and that convictions for both cannot stand. (*Lilly*, 56 Ill. 2d at 496; *People v. Massey* (1991), 219 Ill. App. 3d 909, 913, 579 N.E.2d 1259.) We disagree with Redmond, however, that attempted first degree murder is a lesser included offense of armed violence and that he should be sentenced on what he asserts to be the "greater offense of armed violence."

■ "Section 2—9 of the Criminal Code of 1961 [citation], which defines 'included offense,' has been interpreted to mean that an offense is a lesser included offense only if the greater offense charged contains all of the elements of the lesser included offense plus some additional elements." (*People v. Howard* (1979), 78 Ill. App. 3d 858, 862, 397 N.E.2d 877.) In the case at bar, the indictment for attempted first degree murder states:

> "They, without lawful justification with intent to commit the offense of first degree murder, intentionally and knowingly attempted to kill Donte Hinton by shooting him in the ear with a handgun, in violation of Chapter 38, Section 8—4/(38—9—1) of the Illinois Revised Statutes 1985, as amended ***."

The indictment for aggravated battery, the underlying felony of the armed violence charge which must be proved to convict defendant of armed violence (see *Howard*, 78 Ill. App. 3d at 862-63), states:

> "They, intentionally and knowingly without legal justification caused bodily harm to Donte Hinton while using a deadly weapon by shooting him in the ear with a gun, in violation, of Chapter 38, Section 12—4—B(1) of the Illinois Revised Statutes 1985 as amended, ***."

In light of the above, attempted first degree murder is not a lesser included offense of armed violence. The elements necessary to prove attempted first degree murder are not contained in the underlying

aggravated battery felony of the armed violence charge; attempted first degree murder requires an intent to kill and is a specific intent crime, whereas aggravated battery requires intent to cause bodily harm and is a general intent crime. Accordingly, attempted first degree murder cannot be a lesser included offense of armed violence based upon aggravated battery. Both attempted first degree murder and armed violence, therefore, represent separate offenses arising out of the same physical act; one is not a lesser included offense of the other. When more than one offense arises from the same physical act, a judgment of conviction and sentence should be imposed on the more serious offense. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477; see also *Massey*, 219 Ill. App. 3d at 913; *People v. Sass* (1979), 73 Ill. App. 3d 554, 392 N.E.2d 399.) Because attempted first degree murder constitutes the more specific offense, it is the more serious offense upon which judgment and sentence should be entered. (*Massey*, 219 Ill. App. 3d at 913.) In the instant case, therefore, the trial court properly entered judgment and sentence on Redmond's conviction for attempted first degree murder. However, because the armed violence charge was based on the same physical act as the attempted first degree murder charge, the armed violence conviction must be vacated. *Lilly*, 56 Ill. 2d at 495-96.

We briefly note that *People v. Howard* (1979), 78 Ill. App. 3d 858, 397 N.E.2d 877, relied on by Redmond in support of his lesser included offense argument, is factually distinguishable from the instant case. In *Howard*, the defendant was convicted of unlawful use of weapons, reckless conduct, attempted murder and armed violence for firing two shots into the victim's kitchen window. The evidence at trial established that during one evening the defendant called the victim four times, asking the victim to meet him at a tavern. The victim refused. Later that evening, the defendant parked in front of the victim's home, sounded the horn and fired two shots through the kitchen window. The victim was inside the house with his wife and children.

On appeal, the defendant in *Howard* contended that the attempted murder conviction should be vacated because attempted murder is a lesser included offense of armed violence. The appellate court agreed with the defendant, holding that in that situation armed violence contained all of the elements of attempted murder plus the additional element of a dangerous weapon. Here, however, the underlying felony of the armed violence offense was aggravated battery, not attempted murder as in *Howard*. Moreover, as discussed above, the aggravated battery charge did not contain all of the elements of the attempted first degree murder charge.

Redmond next contends that he was not proven guilty beyond a reasonable doubt of attempted first degree murder based on accountability. He argues that the essential elements needed to establish legal accountability were not satisfied in the proof. According to Redmond, the State concedes that Burrage was the one who likely fired the shot that hit Donte Hinton. Although there is no conclusive evidence in the record as to who fired the shot that hit Donte, the State does acquiesce in the theory that, considering where the shot came from, Burrage most likely fired the shot. Assuming, for the sake of argument, that Burrage fired the shot that struck Donte, the State presented ample evidence to prove Redmond guilty of the offense beyond a reasonable doubt based on the theory of accountability.

To prove Redmond's guilt based on accountability, the State was required to show that by his conduct: (1) he aided, abetted, agreed or attempted to aid Burrage in the planning or commission of the offense; (2) he participated before or during the commission of the offense; and (3) he had the intent to promote or facilitate the commission of the offense. (Ill. Rev. Stat. 1989, ch. 38, par. 5—2(c) (now 720 ILCS 5/5—2(c) (West 1992)).) "[T]he word 'conduct' encompasses *any* criminal act done in furtherance of the planned and intended act." (Emphasis added.) (*People v. Kessler* (1974), 57 Ill. 2d 493, 497, 315 N.E.2d 29, *cert. denied* (1974), 419 U.S. 1054, 42 L. Ed. 2d 650, 95 S. Ct. 635.) "Words of agreement are not necessary to establish a common purpose to perpetrate a crime; the common design can be inferred from the circumstances surrounding the commission of the unlawful act." (*People v. Lovelady* (1991), 221 Ill. App. 3d 829, 840, 582 N.E.2d 1217, *appeal denied* (1992), 143 Ill. 2d 644, 587 N.E.2d 1021.) In deciding whether accountability has been established, the trier of fact may consider factors such as the defendant's presence during the crime, acts performed after the crime has been committed, and the offender's flight from the scene. *People v. Dotson* (1986), 143 Ill. App. 3d 135, 142, 492 N.E.2d 903, *appeal dismissed* (1987), 117 Ill. 2d 548, 517 N.E.2d 1090.

■ Redmond argues that no credible evidence proves that he aided Burrage in the planning or commission of the offense because he was not in the area prior to the exchange of gunfire or when the victim was shot. Contrary to Redmond's assertion, however, the evidence did establish that during this ongoing offense he drove onto the scene within seconds after Burrage fired shots toward the building, he fired three shots in the same direction, they both aimed at Andre and that, after the shooting, Burrage got into the automobile driven by Redmond and the two of them fled the scene together.

We briefly note that Redmond's reliance on *People v. Owens*

(1975), 32 Ill. App. 3d 893, 337 N.E.2d 60, in support of his position that he is not accountable for Burrage's actions, is misplaced. The codefendant in *Owens* sat in a car, staring straight ahead, unmoving while murder and armed robbery were committed. This evidence negated the idea that the defendant was a "look out." In the case at bar, Redmond actively participated in the offense by shooting in the direction of Andre and then aiding Burrage in getting away. Since Burrage had the intent necessary to support the charge of attempted murder, and since the evidence supports the finding that Redmond is accountable for Burrage's acts, the evidence was sufficient to support Redmond's conviction for attempted first degree murder.

Redmond further contends that a reasonable doubt as to his guilt exists because the testimony of two of the State's witnesses is incredible and unworthy of belief. He maintains that Solomon and Curtis were not credible because of inconsistencies in their stories. Specifically, Redmond contends that Solomon was not credible because on the night that the offense was committed Solomon told an assistant State's Attorney that Redmond fired one shot from the automobile and that he saw flashes coming from the alley where Andre was standing. On that same night, Solomon told a detective that Redmond fired three shots and Andre fired three shots back at Redmond. At trial, Solomon testified that Andre never fired a gun. Redmond also maintains that Curtis was not credible because in his statement to the assistant State's Attorney and to the police he never mentioned Andre's name. At trial, Curtis testified that on the night of the offense he saw Andre standing between two buildings prior to hearing shots. Redmond further argues that Curtis is not believable because he told his story for the first time just two weeks before trial.

In a bench trial, the trial judge determines the credibility of the witnesses, weighs evidence, draws reasonable inferences and resolves any conflicts in the evidence. (*People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317.) A trial court's determination will not be reversed unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to a defendant's guilt. (*People v. Johnson* (1986), 114 Ill. 2d 170, 190, 499 N.E.2d 1355, *cert. denied* (1987), 480 U.S. 951, 94 L. Ed. 2d 802, 107 S. Ct. 1618.) In the case at bar, the trial court heard Solomon's and Curtis' testimony. The trial court evaluated their credibility and chose to believe their trial accounts of what happened despite discrepancies in their testimony. Although discrepancies existed, we cannot say that the evidence was so unsatisfactory, improbable or implausible as to raise a reasonable doubt as to Redmond's guilt.

Redmond further maintains that reasonable doubt as to his guilt

of attempted first degree murder exists because neither he nor Burrage had the specific intent to kill the victim. Redmond also argues that he was not proven guilty beyond a reasonable doubt of armed violence.

To prove attempted first degree murder, the State must prove that with intent to kill, the defendant committed an act which constitutes a substantial step toward the commission of the murder. (*Howard*, 78 Ill. App. 3d at 861.) Intent is a state of mind which can be shown by surrounding circumstances. (*People v. Muir* (1977), 67 Ill. 2d 86, 91-92, 365 N.E.2d 332, *cert. denied* (1977), 434 U.S. 986, 54 L. Ed. 2d 481, 98 S. Ct. 615, quoting *People v. Coolidge* (1963), 26 Ill. 2d 533, 536-37, 187 N.E.2d 694.) These circumstances can include the character of the assault and the use of a deadly weapon. (*People v. Winters* (1986), 151 Ill. App. 3d 402, 405, 502 N.E.2d 841.) Intent can be inferred when it has been shown that the defendant voluntarily and willingly committed an act, the natural tendency of which is to destroy another's life. *Coolidge*, 26 Ill. 2d at 537.

■ In the instant case, insofar as Burrage had the specific intent necessary for attempted first degree murder, Redmond is accountable. The evidence establishes that Burrage had the intent to kill Andre. However, three-year-old Donte Hinton was shot instead. Burrage's intent to kill Andre is transferred to Donte under the doctrine of transferred intent. Illinois law has held that this doctrine is applicable in attempted murder cases. (*People v. Swaney* (1971), 2 Ill. App. 3d 857, 859, 276 N.E.2d 346.) In *Swaney*, the defendant was charged with and found guilty of attempted murder. The defendant appealed the conviction, contending that there was no evidence of intent to kill the victim because she was hurt accidentally. More specifically, the defendant maintained that he could not be found guilty of intent to kill a third person where, while assaulting another with intent to kill, he unintentionally injured a third person. The appellate court held that, contrary to defendant's argument, the doctrine of transferred intent is applicable when a third person is injured as a result of a defendant's assault upon another person. In the instant case, the record establishes that Burrage had the intent to kill Andre which was transferred to Donte. Redmond, therefore, is responsible for Burrage's actions based on the theory of accountability.

With respect to Redmond's argument that he was not proven guilty of armed violence beyond a reasonable doubt, we need not address this issue as we have vacated his conviction for that offense.

We next address Burrage's arguments on appeal. She initially argues that her conviction for armed violence must be vacated

because it is based on the same physical act as the attempted first degree murder conviction. The State contends that Burrage has waived this issue by failing to raise it at her sentencing hearing and by failing to file a motion to reconsider sentence. The State alternatively argues that Burrage cannot appeal from the armed violence conviction because she was not sentenced on that conviction, and there is no final judgment in a criminal case until the imposition of sentence.

As discussed above, sentencing issues are regarded by courts as matters affecting a defendant's substantial rights and, thus, have been excepted from the doctrine of waiver (*Lindsay*, 247 Ill. App. 3d at 527) and a defendant's failure to file a motion for reconsideration of a sentence within 30 days of sentencing is not a prerequisite to an appeal of sentencing matters (*Lewis*, 158 Ill. 2d at 390). Moreover, "[w]hen a case is properly on appeal from a final judgment on another offense, the reviewing court may also review the appealed conviction of an offense for which no sentence was imposed." (*Frantz*, 150 Ill. App. 3d at 300.) Burrage appeals from her sentence on the attempted first degree murder conviction, which is a final appealable judgment. Thus, we may consider Burrage's contention.

●7 As previously stated, a defendant may not be convicted and sentenced for more than one offense arising out of the same physical act. (*King*, 66 Ill. 2d at 561; *Lilly*, 56 Ill. 2d at 495.) Because Burrage was convicted of both attempted first degree murder and armed violence, and attempted first degree murder is the more serious offense for which in fact sentence was properly imposed, the armed violence conviction must be vacated. *Lilly*, 56 Ill. 2d at 496; *Massey*, 219 Ill. App. 3d at 913.

Burrage's second contention is that she was denied a fair sentencing hearing because the trial court considered improper factors in aggravation. It is well settled that the imposition of a sentence is a matter of judicial discretion and, absent an abuse of discretion, the sentence imposed will not be disturbed on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) In determining a sentence, the trial court should consider such factors as "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, age, prior conviction record, and the nature and circumstances of the offense for which the defendant is being sentenced." *People v. Sowinski* (1986), 148 Ill. App. 3d 231, 248, 498 N.E.2d 650.

At her sentencing hearing, defense counsel argued in mitigation Burrage's age, her young children, her health problems and her pregnancy. Burrage complains that the trial court used this informa-

tion as aggravating, instead of mitigating, factors. The record indicates that the trial court made the following comments:

> "THE COURT: As far as your employment, it is minimal, but I must consider the fact you had two children. So I would assume it would be minimal. Born in Chicago.
>
> BURRAGE: Yes.
>
> THE COURT: Two children 5 and 3, who I must say you have not set a great example for them. And you are presently pregnant?
>
> BURRAGE: Yes.
>
> THE COURT: Another problem can be brought into the world."

The trial court further stated:

> "Probation is not available to you. I wouldn't consider it any way. I have considered your character, your attitude, which I am not too pleased with, you certainly, for Rozene it is going to be a problem. She is pregnant and she will be in the penitentiary, but she will receive adequate medical attention.
>
> Unfortunately we are bringing another child in this world who will be born under very poor circumstances in the penitentiary. But looking at your background and your conduct in the past years you haven't been the best mother in the world for the other two children you have anyway. I certainly won't see you within [*sic*] any prizes as the mother of the year."

■ If we view these comments in a light most favorable to defendant, we pause and take exception to some of them. Stating that the unborn child would be another problem in the world is a stereotypical judgment that belies our notion of placing a high value on children—our future. Although it is commonly accepted that it is unfortunate that a child is born in the penitentiary, absent many factors not in the record, it is overbroad to state that the birth would be under poor circumstances or that defendant has not been a good mother to her children. However, we should not view these comments in the light most favorable to defendant. What is said and done in the context of all the proceedings should be considered. In total, the trial court merely surmised that Burrage's criminal activity had a negative impact upon her children. This is a fair comment. The record does not support Burrage's assertion that these factors were used by the trial court in aggravation. The trial court merely balanced the mitigating factors that Burrage was pregnant and the mother of two children against Burrage's prior criminal conduct that adversely affected her children.

The trial court also considered Burrage's prior criminal record, which included forgery and a juvenile conviction for robbery. While Burrage was on bond for the present offense, she was arrested for possessing weapons and dealing drugs. The trial court further

considered the need for protecting society. The trial court considered all relevant factors in sentencing defendant and defendant has shown no prejudice by any of the court's comments. *People v. Spears* (1988), 169 Ill. App. 3d 470, 484-85, 525 N.E.2d 877, *appeal denied* (1988), 122 Ill. 2d 589, 530 N.E.2d 259.

Burrage also argues that the trial court improperly considered the harm suffered by the victim. In referring to the victim, the trial court stated:

"No question that he will have some substantial injuries that will last him all the [rest of] his life."

Burrage argues that there was no evidence regarding the victim's lifelong prognosis and, consequently, the judge's comment was improper.

Burrage failed to give the full text of the trial court's statement. Prior to the above quote, the trial court said:

"We have another one of those situations [senseless shooting of innocent bystander children], another injured child. I hope the child recovers."

■ We find no error in these comments. It goes without saying that as a society we are sickened by incidents of this nature. No harm is done by expressing the sentiment that we hope the child recovers from his wounds. The medical evidence was stipulated to by Burrage. The victim was shot in the head and brain surgery was required to remove a bullet that was lodged in the parieto-occipital region of his brain. The trial court's comment that these substantial injuries will plague the victim for the rest of his life is somewhat overbroad as there was no medical evidence regarding the victim's condition at the time of the trial or prognosis of his future recovery. Nevertheless, the trial court's concern that the victim will probably suffer long-term emotional and physical consequences is not so inconceivable as to warrant a reversal or remand for resentencing. Moreover, the argument that long-term consequences of the victim's injury were a consideration used by the court in sentencing Burrage is not supported by our review of the record. There is no evidence that the length of Burrage's sentence was affected. Burrage was convicted of a Class X felony for which the sentencing range is 6 to 30 years' imprisonment. (See Ill. Rev. Stat. 1989, ch. 38, par. 8—4(c)(1); Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1 (a)(3) (now 720 ILCS 5/8—4(c)(1) (West 1992); 730 ILCS 5/5—8—1(a)(3) (West 1992).) She was sentenced to 22 years' imprisonment, which is within the statutory range. When a trial court imposes a sentence that is within statutory limits, it may not be altered upon review absent an abuse of discretion. (*People v. Sprawls* (1990), 205 Ill. App. 3d 337, 342, 562 N.E.2d 1065.) The trial court did not abuse its discretion.

■ Finally, we find Redmond's and Burrage's arguments that the trial court may have been influenced by both convictions in determining their sentences, requiring remandment for resentencing, without merit. "A cause need not be remanded for resentencing where there is no indication that the sentencing court improperly considered the vacated conviction." (*People v. Bridges* (1989), 188 Ill. App. 3d 961, 969, 545 N.E.2d 367, *appeal denied* (1990), 129 Ill. 2d 566, 550 N.E.2d 559.) Since both offenses are a Class X felony for which the sentencing range is 6 to 30 years' imprisonment, the trial court clearly sentenced defendants on attempted first degree murder within the statutory limit, and there is nothing in the record to indicate that defendants' sentences would have been less severe had they been convicted of only one charge, we find no reason to remand these causes for resentencing.

For the reasons stated, we affirm Redmond's and Burrage's convictions and sentences for attempted first degree murder and vacate their convictions for armed violence.

Affirmed in part; vacated in part.

SCARIANO, J., concurs.

PRESIDING JUSTICE DiVITO, specially concurring:
I concur in the court's judgment. I write separately only to address the impact of recent legislation on future appellate review of unsentenced convictions.

Although there is no final judgment in a criminal case until the imposition of sentence, and in the absence of a final judgment an appeal cannot be entertained (*People v. Flores* (1989), 128 Ill. 2d 66, 95, 538 N.E.2d 481, 492, *cert. denied* (1990), 497 U.S. 1031, 111 L. Ed. 2d 799, 110 S. Ct. 3291; *People v. Caballero* (1984), 102 Ill. 2d 23, 51, 464 N.E.2d 223, 236-37, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 298, 105 S. Ct. 362), in *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, our supreme court vacated an unsentenced conviction. Following *Lilly*, many cases have vacated unsentenced convictions, but I know of no case where a sentence has been vacated or a remandment for imposition of a new sentence has occurred, based merely upon an unsentenced conviction.

Given the holding in *Lilly* and its progeny, and the holding of the court in this case, circuit courts should be put on notice that they must use the "magic words" of vacatur whenever there are unsentenced convictions related to the one-act-one-crime doctrine, or lesser included offenses. The vacatur implicit in imposing sentence on only

some convictions is inadequate. Nevertheless, the issue will be obviated in the future because of the passage of Public Act 88—311, effective August 11, 1993. This amendment to section 5—8—1(c) of the Unified Code of Corrections (730 ILCS 5/5—8—1(c) (West Supp. 1993)) requires:

> "A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence."

For cases after August 11, 1993, a defendant who fails to raise the issue in the circuit court should be deemed to have waived it on appeal; in those instances where the issue is raised, the circuit court will be in the position of entering a formal order of vacatur.

The amendment to section 5—8—1(c) is consistent with our supreme court's stated concerns regarding the work load of the reviewing courts and its amended Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994) limiting the number, length, and types of opinions to be published by the appellate court. It is also consistent with the general principle of appellate review that requires the preservation of error at the circuit level. Because of the amendment there should be fewer frivolous appeals of sentence, and the issue in cases like this should seldom occur.