UNITED STATES, Appellee

v.

**Jeromy J. WILLIS, Senior Airman
U.S. Air Force, Appellant.**

No. 96–0910.
Crim.App. No. 31173.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 4, 1997.

Decided July 7, 1997.

For Appellant: *Major Carol L. Hubbard* (argued); *Colonel Jay L. Cohen, Colonel David W. Madsen,* and *Captain Todi S. Carnes* (on brief); *Lieutenant Colonel Kim L. Sheffield.*

For Appellee: *Major LeEllen Coacher* (argued); *Colonel Theodore J. Fink* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Major Jane M.E. Peterson.*

*Opinion of the Court*

CRAWFORD, Judge:

On mixed pleas, appellant was found guilty of premeditated murder, attempted murder (3 specifications), desertion (2 specifications), disobeying a superior commissioned officer (2

specifications), escape from confinement, resisting apprehension, wrongful appropriation, assault, aggravated assault, carrying a concealed weapon, and breaking restriction, in violation of Articles 118(1), 80, 85, 90, 95, 121, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 918(1), 880, 885, 890, 895, 921, 928, and 934, respectively.

The general court-martial at Shaw Air Force Base, South Carolina, sentenced appellant to a dishonorable discharge, confinement for life, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence. The Court of Criminal Appeals affirmed the findings and sentence. 43 MJ 889 (1996).

We granted review of the following issue: WHETHER APPELLANT'S PLEA OF GUILTY TO THE ATTEMPTED MURDER OF TERRY PLYBON WAS IMPROVIDENT AS THE SPECIFIC INTENT REQUIREMENT OF AN ATTEMPT RENDERS IT LEGALLY IMPOSSIBLE FOR ONE TO BE CONVICTED OF ATTEMPTED MURDER ON A THEORY OF EITHER RECKLESS ENDANGERMENT OR TRANSFERRED INTENT.

We hold that appellant's plea of guilty to attempted murder is provident under either a transferred-intent or a concurrent-intent theory. See United States v. Roa, 12 MJ 210 (CMA 1982).

FACTS

Appellant was initially charged with the attempted premeditated murder of his wife, Marie, as well as several other offenses. Upon learning that his wife and his aunt, Wilma Plybon, were planning to testify against him at an Article 32, UCMJ, 10 USC § 832, hearing, appellant formulated an elaborate plan to kill them.

On the day of the scheduled Article 32 hearing, appellant entered the base legal office building, observed his aunt and uncle in the office of Captain (Capt) Hatch, the Chief of Military Justice, and then went in search of his wife. Upon locating his wife, appellant shot and killed her. He then went back to Capt Hatch's office, where the occupants were by this time aware of the nearby shooting. Appellant's uncle, Terry Plybon, was holding the door closed, so appellant was only able to see into the office through about a 6-inch gap. Appellant could see Capt Hatch at his desk and decided to shoot him (he missed). Appellant knew his aunt was behind the door, so he then tried to shoot, through the 6-inch gap, behind the door where he believed she was standing.

Appellant pleaded guilty to the attempted murder of Terry Plybon, Wilma Plybon, and Capt Hatch. He now challenges the providence of his guilty plea to the attempted murder of his uncle, Terry Plybon. The judge advised appellant that the elements of the attempted-murder charges were as follows:

MJ: First, that on or about the 4th of January 1993, at Myrtle Beach Air Force Base, South Carolina, you did a certain overt act, namely firing a handgun at Captain Mark Hatch.

Secondly, that act was done with intent to commit a specific offense under the UCMJ, namely murder.

Third, that the act amounted to more than mere preparation. In other words, it was a direct movement towards the actual commission of the offense of murder; it wasn't just some preparatory step towards the offense.

And the fourth element is that the act apparently tended to effect the commission of that offense, in other words, that but for some other circumstance, the act would have or could have completed the intended offense of murder.

Now, I've already covered with you, in one respect, the elements of the offense of murder, but the elements of that intended offense would be that—and again this is hypothetical because it's only an attempt that's been alleged here, but the elements of the intended offense would be that the individual, in this case, Captain Hatch, would be dead; second, that his death would have resulted from your act in shooting him; third, that that shooting or killing would have been unlawful and without legal justification or excuse; and

fourth, that at the time, you had the intent to kill or inflict great bodily harm on him. And actually the intent would have been that you intended to kill him.

So those are the elements—the elements both of the offense of attempt, which is what's charged here and what you're pleading guilty to and the underlying offense of murder.

Now, there's two other specifications here also involving allegations of attempted murder and they would have the similar elements. They—again, on that same date, the 4th of January 1993, at Myrtle Beach Air Force Base, South Carolina, you did a certain overt act. In this case, in specification 2, would be pointing a handgun at where you thought Wilma Plybon was and pulling the trigger of that weapon and in specification 3 would be by pointing a handgun at where you thought Terry Plybon was and pulling the trigger of the weapon. And in each case that that act was done with the specific intent to commit murder, in specification 2 of Wilma Plybon and in specification 3 of Terry Plybon.

MJ: And third, that the act amounted to more than mere preparation. It was a direct movement towards the commission of the offense and that the act apparently tended to effect the commission of the offense of—of murder. And again, the intended offense, the elements would be that the individual would have been dead, the death would have resulted from your act in shooting them and the killing of them would have been unlawful, that is without legal justification or excuse,and finally that at the time, you had the intent to kill them.

So those are the elements in all three of those specifications of the offense of attempted murder. Do you have any questions about those elements?

ACC: No, your Honor.

MJ: Do you understand that your plea of guilty would admit they're correct?

ACC: Yes, your Honor.

The finding of guilty to the attempted murder of Terry Plybon was based on the following testimony given by appellant at the providence inquiry:

MJ: Okay. Can you tell me what happened with respect to these three specifications?

ACC: On the 4th of January, 1993, immediately after shooting my wife, I headed towards Captain Mark Hatch's office where I knew that my aunt, Wilma Plybon and her husband, Terry Plybon, were. I went to that office with the intent to kill my aunt, Wilma Plybon and as I attempted to open the door it was jammed. And at that time I tried to barge in and the door opened about 6 inches. And at that time I—I believe that my attempt to kill my aunt was hopeless. I—I didn't think that I would be able to get to her. So at that time, since the door was open only 6 inches, Captain Mark Hatch was sitting directly within my view by the way his office is arranged, and he was just sitting there looking at me. And immediately the thought came to my head just to fire a shot at him and at that time I—I fired a shot at him.

ACC: And from this point on my memory is a little hazy, but from reading the witness' statements—the witness' statements, I assume that after I fired that round, I must have taken my hand around behind the door and tried to fire a shot—or several shots to where I thought my aunt, Wilma Plybon was, and in doing so, I—it—it—if my weapon—if my nine millimeter had not jammed, I probably would have shot her husband Terry Plybon as well. I didn't have the intent but I did endanger him at that time. And from reading the witness' statements—witness' statements, they said that I squeezed the trigger three times in an attempt to shoot him.

MJ: And you're satisfied that's correct, that you, in fact, did that?

ACC: They are all consistent and I am—I am satisfied that my memory of the incident of that day is not what I thought it was, but from reading the investigation—investigation reports and the witness' statements, I find that my memory is not a hundred percent and I rely upon the consistency of the three people—three people that were in that office at that time.

MJ: Okay. Well, in other words, based upon what they stated they observed, you're convinced that that's the way it happened?

ACC: Yes, your Honor.

## DISCUSSION

■ In order for a court to reject a guilty plea, there must be a " 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 MJ 433, 436 (CMA 1991). The "mere possibility of conflict" is not enough. *Id.*, citing *United States v. Clark*, 28 MJ 401, 407 (CMA 1989).

■ Criminal conduct requires a *mens rea* and *actus reus*. *See, e.g., United States v. Anzalone*, 43 MJ 322 (1995); *United States v. Sicley*, 6 USCMA 402, 407, 20 CMR 118, 123 (1955). The specific intent to commit a crime plus an act beyond mere preparation are required to support a conviction for attempt under Article 80. There are various degrees of *mens rea:* for example, the intent to commit a crime, reckless misconduct, or negligent misconduct. As with the degrees concerning the mental state, there are various degrees of consequences or results when there are crimes against the person: for example, death, serious bodily harm, and battery. The question of criminal liability when there has been an injury or killing of an unintended victim has bedeviled the commentators[1] and the courts.[2] Suffice it to say, where there is, as in this case, an intent to kill and an act designed to bring about the desired killing, the defendant is responsible for all natural and probable consequences of the act, regardless of the intended victim.

We have observed that a court may find specific intent to kill from the "high risk of homicide" accompanying a defendant's actions and an inference that the defendant "intend[ed] the natural and probable conse-

quences of ... [his] acts...." *Roa*, 12 MJ at 211. In *Roa*, we held that the military judge applied the wrong *mens rea* standard under Article 118(3). As to *mens rea* under Article 80, there must have been a specific intent to kill.

The concurrent-intent theory is best explained in *Ford v. State*, 330 Md. 682, 625 A.2d 984, 1000 (1993), where that court explains that "intent is concurrent ... when the nature and scope of the attack, while directed at a primary victim, are such that we can conclude the perpetrator intended to ensure harm to the primary victim by harming everyone in that victim's vicinity." *See also Ruffin v. United States*, 642 A.2d 1288, 1298 (D.C.1994). Concurrent intent does not apply when the intent to commit a specific act is unrelated to the results or is too remote in its occurrence to have any bearing on the actor's state of mind.

■ Under a concurrent-intent approach, we infer the intent when the result was the same as that intended or at least a natural and probable consequence of the intended result. As long as the defendant has the requisite intent for the intended crime, the defendant will be responsible for the natural and probable consequences of the act.

■ Appellant's admitted actions are sufficient to establish that he had the concurrent intent to kill both his aunt and his uncle. Appellant believed his aunt was located behind the door in the room. He was also aware that his uncle was somewhere in the room because he had seen him there earlier. Appellant tried to shoot behind the door in three different spots, moving his pistol randomly between shots.

Appellant asserts he did not have the intent to "kill" his uncle. However, by shooting behind the door, appellant created a killing zone. The natural and probable con-

---

1. R. Perkins & R. Boyce, *Criminal Law* 921 (3d ed.1982); J. Dressler, *Understanding Criminal Law* 108 (1987); W. LaFave & A. Scott, Jr., *Substantive Criminal Law* § 3.5(c) at 309 (1986); § 2.03, ALI Model Penal Code, *reprinted in ALI Model Penal Code and Commentaries* 253 (1985).

2. *See Harvey v. State*, 111 Md.App. 401, 681 A.2d 628 (1996); *People v. Fernandez*, 88 N.Y.2d 777,

650 N.Y.S.2d 625, 673 N.E.2d 910 (1996); *State v. Abeyta*, 120 N.M. 233, 901 P.2d 164, 174 (1995); *People v. Burrage*, 269 Ill.App.3d 67, 206 Ill.Dec. 450, 457, 645 N.E.2d 455, 462 (1994); and *State v. Rodriguez–Gonzales*, 164 Ariz. 1, 790 P.2d 287, 288 (App.1990).

sequence of appellant's actions was the death or grievous bodily harm of whoever was behind the door. Thus, we conclude that appellant's shooting into the occupied room together with the necessary intent to kill Wilma Plybon was sufficient for the military judge to accept his guilty plea to the attempted murder of Terry Plybon. We need not delineate here the outer limits of concurrent intent or transferred intent but limit our holding to a conclusion that appellant's pleas, under the facts of this case, are provident.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges GIERKE and EFFRON concur.

SULLIVAN, Judge (concurring in the result):

This is a guilty-plea case. Appellant admitted that he had an intent to kill Terry Plybon. However, he also said, "I didn't have the intent but I did endanger him at that time." Whatever he meant by that statement was undermined by his subsequent statements rejecting his version of the events for what the witnesses said, namely, "that [he] squeezed the trigger three times in an attempt to shoot him." Appellant adopted the witnesses' version because he was "satisfied that [his] memory of the incident of that day [was] not what [he] thought it was...."

I vote to affirm this case on the basis of this Court's decision in *United States v. Harrison*, 26 MJ 474 (1988).